**Alfonso DARNELL, Plaintiff-Appellant,**

v.

**CITY OF JASPER, ALABAMA, a municipal corporation, Defendant-Appellee.**

No. 82–7255.

United States Court of Appeals, Eleventh Circuit.

April 23, 1984.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant.

Morris W. Savage, Jasper, Ala., for defendant-appellee.

Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Appellant Darnell proved that the City of Jasper, Alabama, engaged in intentional discrimination by refusing to hire him as a police officer because of his race in violation of Title VII, 42 U.S.C. § 2000e–2(a) (1976). The City does not appeal the finding of a Title VII violation. Darnell, however, appeals the remedy awarded him by the district court. Finding the remedy inadequate to make Darnell whole, we vacate that portion of the district court's judgment and remand for entry of the relief set forth in this opinion.

## I. BACKGROUND

In July of 1973, Alfonso Darnell submitted a written application to the Jasper Civil Service Board for employment as a city police officer. Under Alabama law, the Civil Service Board is entrusted with the responsibility of testing an applicant's suitability for civil service employment. Pursuant to its authority, the Board authorizes the police chief to conduct background investigations of persons applying for jobs with the police department. The Board, based on the applicant's civil service exam scores and the police chief's recommendation,[1] then decides whether to place

---

1. Applicants were also required to meet certain standards outlined in the Alabama Peace Officer Standards and Training Commission Act. Ala.

the applicant on the City's employment eligibility roster, a list from which all new employees must be chosen.

When Darnell applied for a job as a police officer, the Jasper Police Chief conducted a background investigation and recommended that the Civil Service Board reject Darnell's employment application. The Board followed the Police Chief's recommendation and rejected Darnell's application. Significantly, Darnell was not given an opportunity to take a civil service exam—the successful completion of which was necessary to placement on the eligibility roster.

Darnell then sued the City of Jasper under Title VII, 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1981 charging racial discrimination. The district court found that the City denied Darnell employment because of his race, but the court refused to order him instated as a police officer. The court reasoned that because the Civil Service Board possessed the authority under state law to establish mandatory eligibility rosters and because Darnell did not bring the Board into the suit, the court was powerless to order the defendant City to employ him. Darnell appeals that ruling and further challenges the district court's refusal to grant him back pay.

## II. DISCUSSION

■ We begin with what by now must be considered beyond peradventure: the basic purpose of Title VII relief is to "make whole" victims of unlawful employment discrimination. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976). To this end, the Act "vest[s] broad equitable discretion in the federal courts to 'order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ...', or any other equitable relief as the court deems appropriate.'" *Franks v. Bowman*

*Transportation Co.*, 424 U.S. at 763, 96 S.Ct. at 1264. Moreover, "Congress' purpose in vesting a variety of 'discretionary' powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the 'fashioning of the most complete relief possible.'" *Albermarle Paper Co. v. Moody*, 422 U.S. at 421, 95 S.Ct. at 2373.

■ Darnell requested, among other things, that the district court order him instated as a Jasper police officer. In a similar context, this circuit has followed the rule that "reinstatement is a basic element of the appropriate remedy in wrongful employee discharge cases and, except in extraordinary cases, is required." *Allen v. Autauga County Board of Education*, 685 F.2d 1302, 1305 (11th Cir.1982) (citations omitted). The rule of "presumptive reinstatement" in wrongful discharge cases follows the notion that money damages will seldom suffice to make whole persons who are unlawfully discriminated against in the employment environment. *Id.* at 1306. Similarly, money damages will seldom suffice in the case of a prospective employee who is denied employment for reasons declared impermissible by Title VII. In this sense, instatement goes a long way toward removing the ill effects of the unlawful employment decision and making the discriminatee whole. *See League of Latin American Citizens v. City of Salinas Fire Department*, 654 F.2d 557, 558 (9th Cir. 1981) (once intentional discrimination is shown, applicant should be awarded position retroactively unless employer shows by clear and convincing evidence that even in the absence of discrimination applicant would not have been hired), *cited with approval in Walker v. Ford Motor Co.*, 684 F.2d 1355, 1362 n. 9 (11th Cir.1982).

■ Absent discrimination, the Civil Service Board would have allowed Darnell to take its civil service examination and, if successful, he would have been placed on the City's employment eligibility roster.

Code § 36–21–46 (1975), originally enacted in 1971.

To this much relief, Darnell was clearly entitled. The fact that the Board did not appear as a party defendant to this suit hardly serves as a bar to the proper exercise of the "broad equitable discretion" conferred on federal courts to remedy Title VII violations. *Cf. Washington v. Washington State Commercial Passenger Fishing Vessel Association*, 443 U.S. 658, 692–93 n. 32, 99 S.Ct. 3055, 3077–78 n. 32, 61 L.Ed.2d 823 (1979) (holding that a district court's injunctive powers extend, in appropriate circumstances, to nonparty defendants that interfere with court orders). We therefore hold that the district court erred by refusing to order the City, and the Civil Service Board as an entity functioning under the authority of the City, to administer a civil service exam to Darnell. Furthermore, the district court should retain jurisdiction of this matter after remand so that it may order Darnell instated as a city police officer if he passes that examination and meets any other valid qualifications of the position. *See Locke v. Kansas City Power and Light Co.*, 660 F.2d 359, 368 (8th Cir.1981) (suggesting similar approach).[2]

Darnell also appeals the district court's refusal to grant him back pay. Although recognizing that Title VII authorizes it to award back pay to discriminatees, the district court concluded that Darnell was not entitled to such an award because the aggregate amount of his earnings from the time of the act of discrimination to the time of this suit exceeded the total amount he would have earned as a Jasper police officer during the same period.

■ No one contests that back pay awards serve the "make whole" objectives of Title VII. *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 252 (5th Cir. 1974), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). However, because a discriminatee has a duty to minimize damages and because alternative employment opportunities will sometimes prove more economically rewarding than the position sought, back pay awards are limited to proven economic loss. *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1155–56 (5th Cir.1979). Thus, Title VII provides:

> Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e–5(g) (1976).

■ Darnell proved that in two of the nine years since he was denied employment as a Jasper police officer he earned less in other jobs than he would have earned as an officer. The district court, however, interpreted "interim earnings" to mean the total amount of a discriminatee's income over the entire nine-year period. Because Darnell admittedly earned more while employed in other jobs during that time than he would have earned as a police officer, the district court refused to award him back pay.

■ We disagree with the district court's interpretation of "interim earnings." The back pay provisions of Title VII were "expressly modeled on the back pay provision of the National Labor Relations Act." *Albermarle Paper Co. v. Moody*, 422 U.S. at 419, 95 S.Ct. at 2372; *Brown v. A.J. Gerrard Manufacturing Co.*, 715 F.2d 1549, 1550 (11th Cir.1983) (en banc). With court approval, the NLRB has consistently interpreted "interim earnings" according to a "quarterly earnings formula," such that

---

**2.** As a result of the substantial passage of time between this decision and the original acts of discrimination against Darnell, instatement at an entry level position may prove inadequate to "make whole" this victim of intentional racial discrimination. For if Darnell had not been discriminated against, he presumably would have made some advancement through the police department's seniority system. On the other hand, it may be that advanced seniority would be an inappropriate remedy in this case because of the nature of the work involved. We note these concerns so that on remand the district court might consider whether some form of advanced seniority should be awarded Darnell if he is instated as a police officer. *See Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1183–84 (5th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976).

back pay entitlement is calculated in the following manner:

> ... Loss of pay shall be determined by deducting from a sum equal to that which [the employee] would normally have earned for each such quarter or portion thereof, [his] net earnings, if any, in other employment during that period. Earnings in one particular quarter shall have no effect upon the back-pay liability for any other quarter.

*NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 345, 73 S.Ct. 287, 288, 97 L.Ed. 377 (1953), *quoting, F.W. Woolworth Co.*, 90 N.L.R.B. 289, 292–93 (1950).[3]

Although we have discovered no cases applying the "quarterly earnings formula" in the context of a Title VII action, we conclude that such a formula more faithfully serves the remedial objectives of Title VII and, in any case, promotes the consistent application of back pay awards rendered under both Title VII and the NLRA. Therefore, the district court erred by refusing to award Darnell back pay for those periods in which his earnings were less than the amount he would have earned as a Jasper police officer. On remand, the district court should consider the evidence proffered by Darnell together with any other evidence it deems necessary on the back pay question.[4] Accordingly, we vacate the portion of the district court's judgment con-cerning the relief to be afforded Darnell and remand for further proceedings consistent with this opinion.[5]

VACATED in part; and REMANDED with instructions.

---

3. In addition, the Supreme Court has indicated that while cases construing the NLRA "generally guide, but do not bind, courts in tailoring remedies under Title VII," decisions under the NLRA are given great weight in interpreting the scope of Title VII's remedial provisions. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 3062–63 n. 8, 73 L.Ed.2d 721 (1982). Furthermore, this court sitting en banc recently followed NLRB practice and decisions under the NLRA when we held that state unemployment compensation benefits may not be deducted from a Title VII back pay award. *Brown v. A.J. Gerrard Manufacturing Co.*, 715 F.2d at 1550.

4. Although we need not decide whether quarterly data is required by the formula we adopt today, we note that Darnell, without objection, proffered *yearly*, rather than quarterly, earnings data and that this type of data apparently provided the best statistical evidence for determining back pay. On remand, the district court may choose to accept this type of evidence, or it may require quarterly figures, as it deems appropriate under the circumstances presented.

In remanding this case, we also note that Darnell must pass the civil service examination in order to qualify for any back pay award. He is not entitled to back pay under Title VII if he fails the test for the simple reason that failure of the exam, objectively administered, would indicate that Darnell would not have been hired "but for" the City's intentional discrimination against him. *Cf. Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 286–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977) (challenges to discriminatory employment decisions held subject to "but for" causation test).

5. Darnell also challenged the district court's failure to award damages in lieu of instatement. However, that argument is foreclosed by our decision in *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1363–65 (11th Cir.1982).