Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

GEORGE LAI CONTRACTING, LTD., Defendant.

No. 84–4154–CV–C–5.

United States District Court, W.D. Missouri, C.D.

July 22, 1985.

Francis X. Lilly, Sol. of Labor, Dept. of Labor, Washington, D.C., Jaylynn K. Fortney, Kansas City, Mo., for plaintiff.

Steven R. Miller, Miller & Bash, Kansas City, Mo., for defendant.

## OPINION AND ORDER

SCOTT O. WRIGHT, Chief Judge.

This case was brought by the United States Department of Labor (hereinafter "Plaintiff") under § 11(c) of the Occupational Safety and Health Act of 1970, codified at 29 U.S.C. § 660(c). Plaintiff claims that defendant, a general contractor based in Lake Ozark, Missouri, discharged an employee in retaliation for his communication with OSHA about a possible safety hazard on the jobsite. The case was tried to the Court on April 22, 1985.

### I. Findings of Fact

1. George Lai Contracting was at all relevant times a sole proprietorship, owned and operated by George Lai, engaged in the general construction contracting business, and located in Lake Ozark, Missouri.

2. In the regular course of business, defendant used goods and services from persons and firms located out of state.

3. In February, 1983, David Workman was hired by George Lai Contracting, Ltd. At the time he was hired, David Workman earned $5.00 per hour. At the time he was discharged from his employment, David Workman earned $6.00 per hour.

4. David Workman was hired along with his brother Kevin Workman to perform work on defendant's construction project at the Rainbow End Condominiums in Lake Ozark, Missouri. The foreman of their work crew was Floyd Dake. An additional worker, Gary Crawford, was hired in later in the spring.

5. In the early part of August, 1983, the work crew began building concrete walls for a sewage treatment facility. In order to build the top half of the 16-foot high

wall, it was necessary to erect scaffolding. David Workman, Kevin Workman, and Gary Crawford built a makeshift scaffolding.

6. David Workman voiced his concern about the safety of the scaffolding to Foreman Dake shortly after Gary Crawford almost fell off of it. Foreman Dake said that the scaffolding was sufficiently safe and that no safety improvement needed to be made.

7. On the morning of August 29, 1983, David Workman called OSHA on the telephone and inquired about his rights. The OSHA agent replied that an employee is entitled to express his concerns over workplace safety and cannot be discharged for registering a complaint with OSHA.

8. David Workman arrived at the job site at approximately noon on August 29, 1983. Although he had missed work that morning, his absence was not a problem. As was the regular custom of the men on the work crew, David Workman had sent word with his brother that he would be absent in the morning and would arrive sometime in the early afternoon. Foreman Dake did not comment on David's absence in the morning nor when he saw David on the jobsite in the early afternoon.

9. Work resumed in the early afternoon. At approximately 2:00 p.m., the men stopped for their afternoon break. David Workman again voiced his concerns over the safety of the scaffolding to Foreman Dake. Foreman Dake again said that no changes to the scaffolding would be made. At that point, David Workman informed Foreman Dake that he had called OSHA that morning. Foreman Dake responded: "That will probably cost you your job."

10. Foreman Dake immediately thereafter called George Lai at the office. The first thing Dake said was "George, David called OSHA."

11. After the afternoon break, David Workman asked Foreman Dake, "Did I get fired?" Foreman Dake replied, "Yes."

12. David Workman then went to the business office to pick up his paycheck.

David told George Lai, "If I'm fired, I want my check." George Lai gave David his paycheck without saying anything, thereby indicating that David had been fired.

## II. Conclusions of Law

1. This Court has jurisdiction over the subject matter of this action and over the parties.

2. Defendant is and was at all relevant times an employer within the meaning of 29 U.S.C. § 652(5).

3. David Workman was at all relevant times an employee within the meaning of 29 U.S.C. § 652(6).

4. In calling OSHA and in complaining about safety conditions to Foreman Dake, David Workman was engaged in protected activity for which he may not be punished by his employer. 29 U.S.C. § 660(c)(1).

5. Defendant, both through its owner, George Lai, and its foreman, Floyd Dake, terminated David Workman's employment because he had engaged in protected activity, all in violation of 29 U.S.C. § 660(c)(1).

6. All of the legitimate reasons for David Workman's discharge (e.g. that he was a "troublemaker" and that he had merely been laid off due to a lack of work) are unsupported by credible evidence and are a mere sham and pretext for defendant's unlawful motivation.

## III. Remedies

Under 29 U.S.C. § 660(c)(2), the Court is empowered to enjoin defendant from violating § 660(c)(1) in the future, to award David Workman back pay for the period he was unemployed, and to order other appropriate relief. In view of defendant's recalcitrant posture throughout the trial of this case, the Court believes that it is appropriate to enjoin defendant from violating § 660(c)(1) in the future. In addition, the Court will order defendant to post, in a prominent place, for sixty (60) consecutive days, a notice stating that it will not discriminate against employees for engaging in activities protected by § 660(c)(1). Finally, the Court will award

full back pay to David Workman. With respect to the back pay award, the Court makes the following specific factual findings:

1. During the summer of 1983, while David Workman was still employed by defendant, Foreman Dake assured David Workman and the other members of his work crew that there would be sufficient work over the winter to keep them all employed and on the payroll on a full-time basis.

2. After he was discharged on August 29, 1983, David Workman remained unemployed until February 16, 1984. During that period, David received approximately $1,200.00 in unemployment benefits.

3. Of the four regular members of the work crew (David Workman, Kevin Workman, Gary Crawford, and Floyd Dake), Crawford and Dake remained steadily employed throughout the winter. Kevin Workman was fired by Foreman Dake on August 30, 1983. Kevin was not fired because there was not enough work to keep him busy; to the contrary, Kevin was terminated because he confronted Foreman Dake about having discharged his brother David for engaging in protected activity.

4. Gary Crawford worked 823.25 regular hours and 50.5 overtime hours during the period David Workman remained unemployed.

5. If David Workman had not been discharged, he would have remained in the employ of defendant throughout the winter of 1983–84.

6. The appropriate benchmark of how many hours David Workman would have worked that winter is the number of hours worked by Gary Crawford. Contrary to defendant's contention that there was insufficient work to keep David Workman employed throughout the winter of 1983–84, the greater weight of the credible evidence showed that defendant would have employed David on a regular, full-time basis throughout that period but for his unlawful termination.

Based on these findings of fact, the Court makes the following conclusions of law with respect to the amount of back pay to which David Workman is entitled:

1. At his regular hourly rate of $6.00 per hour, David Workman would have earned a total of $5,394.00 during the period he was unemployed.

2. Although David Workman received approximately $1,200.00 in unemployment compensation over the period he was unemployed, the Court concludes that this amount should not be deducted from David's back pay award. The United States Court of Appeals for the Eighth Circuit has yet to address this issue. Nevertheless, the majority of the courts of appeals which have confronted the issue have held that unemployment benefits fall within the "collateral source" rule and should not be deducted from back pay awards. *See McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214, 217 (3d Cir.1984); *Darnell v. City of Jasper,* 730 F.2d 653, 657 n. 3 (11th Cir.1984); *Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614, 627–28 (6th Cir. 1983); *Kauffman v. Sidereal Corp.,* 695 F.2d 343, 346–47 (9th Cir.1982); *E.E.O.C. v. Ford Motor Co.,* 645 F.2d 183, 195–96 (4th Cir.1981), *rev'd on other grounds,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), *adhered to original position on remand,* 688 F.2d 951, 952 (4th Cir. 1982).

3. In addition to the back pay award of $5,394.00, David Workman is entitled to both pre-judgment and post-judgment interest on the back pay award. The decision of whether to award pre-judgment interest in a case arising under federal law is a matter committed to the discretion of the district court. *United States v. California State Bd. of Equalization,* 650 F.2d 1127, 1132 (9th Cir.1981); *Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d 77, 86 (2d Cir.1980). Pre-judgment interest ordinarily is awarded whenever it is necessary to fully compensate the wrongfully injured party. *Id.* at 87. Here, defendant willfully fired David Workman in violation of federal law, and

thereby deprived him of his regular income for a period of approximately six months. Under the circumstances of this case, the Court concludes that it is appropriate to award prejudgment interest on the amount wrongfully deprived. Pursuant to Mo.Rev.Stat. § 408.020, prejudgment interest is to be computed at the rate of nine percent per annum. As of the date of the judgment herein, the paychecks which David Workman missed by reason of his unlawful termination are overdue by an average of twenty months. Thus, David Workman is entitled to pre-judgment interest on the back pay award for a period of twenty months at a rate of nine percent per annum, compounded annually.

6. The total amount of back pay plus pre-judgment interest to which David Workman is entitled is $6,232.23.

### IV. Conclusion

In accordance with the foregoing, it is hereby

ORDERED that judgment in the amount of $6,232.23 is entered in favor of David Workman and against George Lai Contracting, Ltd., on plaintiff's claim that defendant violated 29 U.S.C. § 660(c)(1), by discharging David Workman for engaging in protected activity. This judgment includes an award of $5,394.00 in back pay, and pre-judgment interest in the amount of $838.23. It is further

ORDERED that defendant, its officers, agents, servants and employees are enjoined from violating 29 U.S.C. § 660(c)(1). It is further

ORDERED that defendant shall, for sixty (60) consecutive days commencing ten (10) days after entry of judgment herein, post in a prominent place a notice stating that it will not discriminate in any manner against its employees who report safety violations to OSHA or otherwise engage in activities protected by § 11(c)(1) of the Occupational Safety and Health Act of 1970. It is further

ORDERED that defendant shall bear the costs of this action.