Nicholas D. LENGEN,
Plaintiff–Appellant,

v.

DEPARTMENT OF TRANSPORTATION, National Transportation Safety Board, and Federal Aviation Administration, Administrator, Defendants–Appellees.

No. 89–8154.

United States Court of Appeals, Eleventh Circuit.

June 25, 1990.

nated against Lengen in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 791, 794, 794(a) ("the Rehabilitation Act"), but denying damages.

## I. STATEMENT OF THE CASE

Nicholas Lengen served in the United States Air Force from December 1971 until his honorable discharge in November 1975. For two and a half years of that time, Lengen served as an Airborne Aircraft Controller. He received training in communications, radar operations, weather, and phraseology. After his discharge, Lengen received the Joint Service Commendation Medal for his help in airlifting personnel out of Phnom Penh, Cambodia, in April 1975, and the Air Medal for Meritorious Achievement for his help in airlifting persons near Saigon, South Vietnam, in April 1975. On November 13, 1977, Lengen's right arm had to be amputated as the result of an automobile accident.

In August 1981, the United States Office of Personnel Management ("OPM") announced nationwide that it would accept applications for air traffic control positions from August 17 to August 28, 1981. The OPM stated that all applicants must (1) score 70 or above on a written test, (2) have three years general experience or four years of college or any combination of the two equalling three years, (3) have one year of specialized experience or one year of graduate work or superior academic achievement, and (4) be age 30 or under. In 1981, at age 28, Lengen submitted an application for a GS-7 Air Traffic Control Specialist position with the Federal Aviation Administration ("FAA") and took the United States Civil Service Examination. In November 1981 Lengen received the results of his civil service exam; he had scored 87.6, 17.6 points above the required minimum.

On April 6, 1982, the Department of Transportation ("DOT") notified Lengen that he was being considered for the position of Air Traffic Control Specialist in the FAA Southern Region. The letter stated that if Lengen wished to be considered

Gerald Cunningham, Atlanta, Ga., Marge D. Shapiro, Norcross, Ga., for plaintiff-appellant.

Nina Hickson Perry, Daniel A. Caldwell, Asst. U.S. Attys., Atlanta, Ga., for defendants-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Nicholas Lengen appeals from the district court's February 13, 1989 order finding that defendants the Federal Aviation Administration and the Department of Transportation ("defendants") discrimi-

further, he would have to (1) attend an interview, (2) submit to a psychological exam, (3) submit to a medical exam, and (4) submit to a security investigation. Lengen also was told to forward his military records to the FAA.

In May 1982, Lengen attended his interview at the FAA Airport Traffic Control Tower, Port Columbus International Airport in Ohio. Lengen wore his cosmetic prosthesis to the interview, leaving his functional prosthesis at home. He was interviewed by Howard Freund, the Flight Service Station Chief, and Dale Nestle of the Air Traffic Control Office. Nestle had never interviewed a handicapped applicant before. When he noticed Lengen's amputated right arm, he administered a performance test, which consisted of inserting flight strips into flight strip holders. Nestle indicated that Lengen had difficulty with this test, possibly because he was wearing his cosmetic prosthesis. Nestle also administered a psychological test.

Nestle did not recommend Lengen for the position of air traffic controller, partly because of Lengen's difficulty on the performance test and partly because of a perceived lack of maturity. Lengen also was examined by Regional Flight Surgeon Dr. Dixon Lackey. Dr. Lackey informed Lengen that he was deficient because of his missing right arm. On June 22, 1982, Lengen received a letter from Donnis Henderson of the DOT Personnel Management Division informing Lengen that he was being removed from consideration for the air traffic controller position. The letter stated, "Our Regional Flight Surgeon has advised us that your right arm is amputated, which does not meet the qualification standards for initial employment, X–118, paragraph 1e(2)." [1]

In September 1982, Lengen requested reconsideration of the disqualification and a grant of initial medical waiver. Dr. Lackey wrote back on September 20, 1982 affirming his finding of disqualification and stating that FAA directives did not permit waivers for initial hires. Lackey then forwarded Lengen's file to the Office of Aviation Medicine of the FAA. Lengen initiated administrative proceedings on December 9, 1982 with the FAA. Lengen named Lackey as the alleged discriminating official.

On April 19, 1983, FAA Civil Rights Officer Clark Sharpe proposed that Lengen take a practical exam to determine whether he was suitable to be an air traffic controller. This proposal was conditioned on Lengen's withdrawing the administrative complaint. Lengen rejected the proposal through his attorney because he did not wish to withdraw his complaint. On May 27, 1983, the FAA notified Lengen that it would walk him through the exam at least ten days before he took it, and sent him a copy of the activities he would be asked to perform. Lengen also rejected this proposal, because it did not list the criteria for success and because it required him to withdraw his complaint.

On July 1, 1983, Lengen filed a complaint in the federal district court for the Southern District of Ohio. The complaint alleged that the FAA and the DOT had discriminated against Lengen on the basis of his handicap in violation of section 504 of the Rehabilitation Act and of the Fifth Amendment. The litigation was transferred to

1. Qualification standard X–118 states: "The applicant must have no absence of any extremity or digit or any portion thereof sufficient to interfere with the requirements for locomotion and manual dexterity of the position being sought."

Apparently these qualifications were revised on September 29, 1979, two years before Lengen took his test, to state the following:

The physical requirements of this standard are based on the arduous or hazardous nature of the duties typically performed by most of the positions covered by the standard. However, since individual positions may not include all such duties, a physical condition or impairment may be disqualifying for appointment only if there is a direct relationship between the condition and the nature of the duties of the specific position to be filled. In some instances, a physical impairment will not disqualify an applicant for appointment if the condition is compensated for by a satisfactory prosthesis, mechanical aid, or by reasonable accommodation. Reasonable accommodation may include, but is not limited to: the use of assistive devices, job modification or restructuring, or adjusted work schedules.

the Middle District of Georgia, and in October 1987 the trial court ordered the FAA to administer an unconditional performance test. Lengen completed this test successfully; the test did not reveal any duties which Lengen could not perform. Although the FAA has offered Lengen employment since that time, it continues to make its offers contingent upon Lengen's withdrawal of his complaint.[2]

The district court heard evidence on liability on June 6, 1988. By this time Lengen was at least 34 years old, four years older than the mandatory maximum age of entry for Air Traffic Controllers. On June 7, 1988 the court entered an oral order stating that the defendants had discriminated against Lengen on the basis of his handicap in violation of the Rehabilitation Act. The court ordered that Lengen be placed in the next available FAA Academy Training class, and set damages for determination on June 14, 1988. The defendants appointed Lengen an Air Traffic Control Specialist, contingent on Lengen's successful completion of the Academy training course. The FAA scheduled Lengen for the June 24, 1988 course. Lengen requested the court to allow him to take a later class; this request was denied. The court then ordered proceedings on damages stayed until Lengen attended the class. Lengen subsequently chose not to attend the Academy or to work for the FAA, because he felt that the FAA was biased against "a one-armed controller."[3]

**2.** On June 26, 1984, the FAA informed Lengen by letter that it had found no discrimination in his case. Lengen did not respond, and the FAA closed the file for failure to prosecute on June 26, 1985.

**3.** The facts surrounding Lengen's refusal to take the course are worth noting. The next available training course was scheduled for June 24, 1988. The damages hearing had been set for ten days earlier, June 14. Lengen felt that it would be difficult for him to attend the June 14 hearing in Ohio and then drive to the training center in Oklahoma City by June 24. In order to have time to set his affairs in order and to prepare for the course, Lengen asked the FAA to place him in the July training course rather than the June course. The FAA refused. Lengen's attorney made the same request of the district court. The court denied the request on June 13. On June 14, the government moved

The court heard the damages issue on October 5, 1988. In an order dated February 2, 1989, the court found that Lengen had failed to prove that "but for" the defendants' actions he would have been hired. Thus the court denied Lengen back pay. The court granted him attorney's fees. Lengen appeals the February 2 order. We must determine whether the district court erred in finding that Lengen could not recover back pay because he did not attend the FAA Training Academy.

## II. ANALYSIS

Section 504 of the Rehabilitation Act states:

No otherwise qualified handicapped individual in the United States, as defined in Section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any executive agency or by the United States Postal Service.

Section 794a(a)(1) of the Act states:

The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (24 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k)), shall be available, with re-

for a stay of the damages proceeding until Lengen completed the course. At this point, Lengen indicated to the court that he did not wish to attend the course, because he felt that he was not being treated like other attendants. When he returned home from the June 14 hearing, he read McClellan, *The Scopes Trial: Making the Grade as an Air Traffic Controller,* Flying Magazine, July 1988, at 70. This article stated that the success rate of FAA trainees dropped from approximately 80% success rate at age 22 to about 50% at age 32. *Id.* at 76. Lengen became firmly convinced that he did not wish to attend the FAA course because (1) hostilities had arisen between Lengen and the FAA, (2) the FAA had refused to let him attend the July class, (3) he was over the statutory age, (4) he was concerned about the statistics cited in Flying Magazine, and (5) he had been out of the Air Force for a number of years.

spect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint.

■ Accordingly, successful Rehabilitation Act plaintiffs are entitled to the same remedies as successful Title VII plaintiffs.[4] Title VII plaintiffs may not recover compensatory and punitive damages, but are entitled to reinstatement with or without back pay and other equitable relief. *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1364 (11th Cir.1982). Such equitable relief includes recovery of fringe benefits or entitlements. *Id.*

The decision regarding whether to grant equitable relief and what equitable relief to grant lies in the discretion of the trial court. *Darnell v. City of Jasper, Ala.*, 730 F.2d 653, 655 (11th Cir.1984). This Court has held, however, that once a plaintiff has proven discrimination, back pay should be awarded "unless special circumstances are present." *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1391 (5th Cir.1978), *cert. denied sub nom. Local 13000, United Steelworkers of America, AFL–CIO CLC v. Parson*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) (quoting *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 252–53 (5th Cir.1974)). Such special circumstances include proof that the plaintiff would not have been hired absent discrimination. *Darnell*, 730 F.2d at 657 n. 4. The district court in the present case found that the defendants had discriminated against Lengen because of his handicap, so back pay should have been awarded absent special circumstances.

In *Darnell, supra,* a black man submitted an application to the Civil Service Board for the position of police officer.

Under the state procedure, the applicant was required to take a civil service exam. Based upon his scores, he would be placed on the employment eligibility roster. 730 F.2d at 654. Darnell's application was rejected because of his race before he was allowed to take the civil service exam. *Id.* at 655. This Court held that the City had to administer a civil service exam to the plaintiff. *Id.* at 656. The Court stated, "Absent discrimination, the Civil Service Board would have allowed Darnell to take its civil service examination and, if successful, he would have been placed on the City's employment eligibility roster." *Id.* at 655.

The Court also held that the plaintiff would have to pass the civil service exam in order to receive any back pay award. *Id.* at 657 n. 4. The Court reasoned that if Darnell had not passed the exam, he would not have been hired regardless of the discrimination, and thus he would not have been entitled to back pay. *Id.* Put another way, in order to receive back pay, the plaintiff had to prove that "but for" the intentional discrimination against him, he would have been hired. *Id.*[5] In order to receive back pay, Lengen, like Darnell, must show that "but for" the defendants' discriminatory actions, he would have been hired.

■ The defendants argued below, and in their brief on appeal, that their offers of employment were contingent on completion of the FAA Academy training, and that had Lengen not completed this training, he would not have been hired even absent a handicap. The defendants, however, did not point to any documented rule or regulation stating this policy. In its order denying Lengen damages, the district court stated, "Since the FAA only hires graduates of the FAA Academy as Air Traffic

---

4. The defendants do not challenge Lengen's right to sue them under the Rehabilitation Act. Accordingly, this Court does not reach the question of whether Lengen has a private right of action against a federal government employer under section 504. This Court has recently held, however, that such a cause of action does exist. *Doe v. Garrett,* 903 F.2d 1455 (1990).

5. Similarly, the Second Circuit has held that a Title VII defendant may rebut a plaintiff's *prima facie* demonstration of entitlement to back pay by proving that the claimant would not have been hired even absent discrimination because the claimant failed to meet nondiscriminatory job requirements. *Cohen v. West Haven Bd. of Police Comm'rs,* 638 F.2d 496, 502 (2nd Cir. 1980).

Control Specialists, the court ... would not be able to determine what back pay, if any, the plaintiff would be entitled to until the plaintiff had successfully completed the Training Academy in Oklahoma City, Oklahoma." The court did not explain the source of its assertion that FAA training was a prerequisite for employment.

Lengen maintains that the FAA training course was not a condition of employment. He argues that FAA training was a prerequisite for *continuing* employment, but not for employment itself. He points to language in the original OPM announcement which states: "Generally, training combines study at the FAA Academy in Oklahoma City with training at the facility where the recruit is assigned, although the order of sessions is flexible." The announcement also states: "Air Traffic Control Specialists who fail to maintain standards during training may be dropped from the program...."

The district court's finding that completion of the FAA training course was a necessary prerequisite to employment is a finding of fact which this Court may not set aside unless it is clearly erroneous. *Pullman–Standard v. Swint*, 456 U.S. 273, 277, 102 S.Ct. 1781, 1784, 72 L.Ed.2d 66 (1982). For the most part, the record is unclear on this issue. It contains a document entitled "Qualification Standards: Air Traffic Control Series." Apparently this is an internal FAA publication. The document states that Air Traffic Control Specialists must possess or obtain an Air Traffic Control Specialist Certificate and/or a Control Tower Operator Certificate, "if appropriate." Each specialist must also possess or obtain a rating for the facility to which assigned. The document does not state whether these certificates are obtained from the FAA, or whether they can be obtained after employment.

The document also states:

Educational and Other Substitutions for Experience

\* \* \* \* \* \*

Other substitutions

 GS–7: Applicants who have passed the written test qualify in full for the experi-

ence requirements for grade GS–7 if they:

—Hold or have held an appropriate facility rating and have actively controlled air traffic in civilian or military air traffic control terminals or centers;

—Hold or have held an FAA certificate as a dispatcher for an air carrier;

—Hold or have held an instrument flight rating;

—Hold or have held an FAA certificate as a navigator or have been fully qualified as a Navigator/Bombardier in the Armed Forces;

—Have 350 hours of flight time as a copilot or higher and hold or have held a private certificate or equivalent Armed Forces rating;

—Have served as a rated Aerospace Defense Command Intercept Director;

—Meet the requirements for GS–5 and in addition pass the written test with a higher score.

These are the only references in this document to FAA training. Even these references are unclear on the question of whether such training is required to obtain a job as an Air Traffic Control Specialist. The record also is unclear regarding whether Lengen possessed any of the substitute qualifications listed above.

A letter to Lengen offering him a position with the FAA contingent upon the withdrawal of his lawsuit is equally unclear. The letter, from Assistant United States Attorney Nina Perry and dated January 13, 1987, informs Lengen that he successfully completed the manual dexterity test for air traffic controllers. The letter then offers him a "contingent appointment"; the offer is contingent upon Lengen's satisfactory completion of "all regulatory processing." The letter states, "This process includes a medical examination and a favorable security clearance." The letter gives the starting date for the next Academy training class, and says: "If you wish to accept a contingency appointment, please execute the enclosed statement and specify the class you want to enter." The letter does not explain wheth-

er the offer is contingent upon completion of the class, although it implies that it was not.

This issue is further complicated by statements made by Lengen's counsel at oral argument which are unsupported by the record. Lengen's counsel stated that even if completion of FAA Academy training is required today, it was not required at the time Lengen would have been hired in 1982 because the FAA had relaxed hiring criteria in response to the 1981 air traffic controllers' strike. While this fact may be true, there is no evidence in the record to support it. Lengen's counsel also argued that the record contains proof that others have been hired as controllers without having completed the FAA course. We find no such proof in the record.

The record does contain, however, the affidavit of Michael Powderly, the manager of the Southern Region of the FAA who had been employed by the FAA since 1967. Powderly's affidavit states that "in order for an applicant to be placed and continue to be employed in this capacity he or she must successfully complete the FAA Training Academy in Oklahoma City, Oklahoma, and progress successfully in the facility training program." This statement indicates that had Lengen been hired before taking the course, his position would have been temporary until he passed the course, at which time it would have become permanent. Further, at oral argument counsel for the defendants stated that an air traffic controller is hired on a probationary basis until such time as he or she passes the FAA course.[6] If the controller passes, he or she becomes a permanent employee and receives permanent, rather than probationary, wages. If the controller does not pass, he or she cannot continue to be employed as an Air Traffic Control specialist.

It appears, therefore, that absent discrimination, Lengen would have been hired as an air traffic controller. Powderly's affidavit and the defendants' concession at oral argument support the conclusion that Lengen would have been hired, at least until such time as he successfully completed the FAA course. Accordingly, we find the district court's conclusion that Lengen had to take the course in order to be hired to be clearly erroneous.

 The remaining question, which the district court did not consider, is whether Lengen would have worked as an air traffic controller for longer than one to one and a half years. As discussed above, the record indicates that successful completion of the FAA course was necessary to continue employment as a controller. If Lengen was not capable of successfully completing the course, it appears from our review of the record that he would not be entitled to back pay for any period beyond the probationary period. Because the district court made no findings on this issue, we must remand for a determination of whether successful completion of the FAA course was necessary for continued employment. *See* Fed.R.Civ.P. 52(a) (court must state findings of fact).

If the district court finds that completion of the test was necessary for continued employment, we conclude that the court must revisit its finding that Lengen's refusal to take the course in 1988 precluded an award of back pay. The court appears to have concluded that Lengen's refusal to take the course in 1988 put him in the same position that he would have been in had he taken the course and failed to complete it in 1982. This conclusion is erroneous. First, the fact that Lengen refused to take the course at a time when he no longer wished to work for the defendants and when open hostilities had arisen has no relevance to the question of whether he would have completed the course successfully at the time he would have been offered the job in 1982.[7] Second, it is not clear that requiring Lengen to take the course in 1988 would be an accurate indica-

---

6. Counsel stated that at present this probationary period is approximately fifteen months.

7. *See Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1561 (11th Cir.), *cert. denied,* 479 U.S.

883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986) (*sua sponte* conclusions by district court, without the factfinding required for resolution of the case, require remand).

tor of whether he would have completed it successfully in 1982. It appears that a person's ability to succeed in traffic control skills decreases dramatically with age. *See* n. 3, *supra.*[8] It may be that while Lengen could have successfully completed the FAA course at age 29, he could not have completed the course at age 36. If this is so, requiring Lengen to take the course at age 36 would not have resolved the issue of whether he could have become a permanent controller in 1982 absent discrimination. *See Cohen v. West Haven Bd. of Police Comm'rs,* 638 F.2d at 503 (test results cannot be used to rebut discrimination "unless the new test can reasonably be thought to measure the applicant's qualifications as of the time of the earlier refusal to hire.")[9]

We find, therefore, that the district court's conclusion that Lengen's refusal to take the course in 1988 precluded an award of back pay is clearly erroneous.

### III. CONCLUSION

For the above reasons, we find that the district court's conclusions regarding whether Lengen had to take the FAA course to be hired and whether his 1988 refusal to take the course amounted to failure are clearly erroneous. The district court's denial of back pay is REVERSED and REMANDED for further factual determinations regarding the necessity of completing the course for continued employ-

ment and the utility of requiring Lengen to take the course in determining damages.

---

**8.** It is not clear that the McClellan article cited in footnote three has been admitted as evidence, or that it is admissible to prove that performance decreases with age. It appears that further evidence is necessary to determine whether the assertions in the article are correct.

**9.** The FAA "Qualification Standards" document states:

Under the authority of Public Law 92–297, a maximum age limit has been established for positions in the Terminal and Center specializations in the Department of Transportation, applicants who have reached their 31st birthday are ineligible for entry into positions on these specializations only. The maximum age limit, *which may not be waived,* does not apply to positions in the station specialization. Lengen was 35 years old at the time that the district court ordered him to attend the FAA

Training Academy. If the maximum entry age requirement applies to the position of Air Traffic Control Specialist, as it appears to do, then by the time the district court ordered the FAA to open a space in the Academy class for Lengen, Lengen would have been ineligible to work as a controller. Because Lengen does not wish to be reinstated, the question of whether the defendants would have been willing to waive the non-waivable maximum age limit is irrelevant. The fact that Lengen was too old to take the job in 1988, however, coupled with the fact that his age would likely have decreased his ability to successfully complete the FAA course, strongly indicates that ordering Lengen to take the course in 1988 was not necessary or helpful to the calculation of damages.