William R. DUTTON, Plaintiff,

v.

JOHNSON COUNTY BOARD OF COUNTY COMMISSIONERS, Defendant.

No. 93–2184–JWL.

United States District Court, D. Kansas.

Nov. 15, 1994.

See also, 859 F.Supp. 498.

Alan P. Blinzler, Overland Park, KS, for plaintiff.

LeeAnne Hays Gillaspie, Mary Martin Buhl, Johnson County Legal Dept., Olathe, KS, for defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

On September 21, 1994, a jury verdict was entered in favor of William R. Dutton, plaintiff in this action, finding that the defendant, Johnson County Board of County Commissioners ("Johnson County"), unlawfully discriminated against plaintiff on the basis of his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* The court directed the Clerk to enter the verdict on the record, but deferred the entry of judgment pending the court's determination of appropriate remedies. Presently at issue before the court is plaintiff's request for noncompensatory relief, namely back pay and reinstatement, as authorized by the ADA 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e–5(g).

### I. Background

. Plaintiff was an equipment operator for the Johnson County Public Works Department before his termination on August 18, 1992. Throughout his employment he suffered from migraine headaches which caused him to be absent from work. He first began experiencing such headaches in 1971 after being injured in the military and his headaches have not changed significantly in quantity or quality since then.

Until 1989, plaintiff used both sick leave and vacation leave to take time from work

when he suffered from his headaches. In 1989, however, the Public Works Department issued a new policy that required employees to schedule vacation time in advance. Due to the unpredictable and random nature of plaintiff's headaches, he was not able to comply with this policy. Plaintiff was first reprimanded for his absenteeism in 1989, but continued to work for defendant despite his absences. Until 1991, plaintiff was allowed to use vacation time to cover absences due to illness when he had exhausted his sick leave. However, in May of 1991, plaintiff was placed on leave without pay status for such absences. He was eventually terminated for absenteeism in 1992. The evidence at trial indicated that, when he was at work, plaintiff performed his job in a satisfactory manner.

Plaintiff brought this action alleging that the defendant county violated the ADA by terminating his employment and failing to offer reasonable accommodations for his disabling condition. The ADA specifically forbids discrimination by employers against individuals with disabilities with respect to the hiring and discharge of employees and the terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). Pursuant to the statute, discrimination includes the failure to provide reasonable accommodations for the physical or mental limitations of an "otherwise qualified individual with a disability" unless the accommodation would impose an "undue hardship" on the operation of the employer's business.[1] 42 U.S.C. § 12112(b)(5)(A). At trial, the jury was instructed to decide whether the defendant violated the ADA by terminating plaintiff's employment and, if so, whether the plaintiff was entitled to damages for any pain, suffering or mental anguish caused by that unlawful discrimination.

The jury ultimately returned a verdict finding that the defendant intentionally discriminated against plaintiff on the basis of his disability in violation of the ADA. In response to questions posed by the court on the verdict form, the jury specifically found that:

(1) Plaintiff has a disability that substantially impairs major life activities.

(2) Plaintiff is a qualified individual who can perform the essential functions of the job of equipment operator with the Johnson County Public Works Department with or without reasonable accommodation.

(3) Defendant did not make a good faith effort, in consultation with plaintiff, to make reasonable accommodations to plaintiff's disability.

The jury was not asked to consider the appropriateness of equitable relief, namely back pay and reinstatement as sought by plaintiff. The jury did, however, consider and find that plaintiff was entitled to $25,000.00 for emotional pain and suffering and mental anguish. The issue of availability of back pay and reinstatement is now before the court.

## II. Remedies

Plaintiff urges the court to find him entitled to back pay and reinstatement and also asks the court to order the defendant to provide reasonable accommodations for his disability upon return to work. Defendant contends that plaintiff is entitled to neither back pay nor reinstatement and, further, that no reasonable accommodation for his alleged disability is either warranted or feasible. The court finds that plaintiff is entitled to both back pay and reinstatement and further orders the defendant to accommodate defendant's disability upon return to work in accordance with the terms of this order.

If an employer violates the ADA, an employee is entitled to those remedies available to employees under Title VII of the Civil

---

1. The ADA defines an individual with a disability as a disabled individual who, with or without reasonable accommodation, can perform the essential functions of his or her position. 42 U.S.C. § 12111(8). An individual with a disability is "otherwise qualified" for a job if he is qualified for the job except that, because of the disability, he needs a reasonable accommodation to be able to perform the job's essential functions. 29 C.F.R. § 1630.9. A disability is a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(2).

Rights Act of 1964. 42 U.S.C. § 12117(a).[2] The court "may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement ..., with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g). Title VII does not limit the range of remedies available, but rather gives the court broad discretion in fashioning relief aimed at the purposes of eliminating discriminatory practices and restoring an aggrieved individual to the position he or she would have been in absent the unlawful discrimination. *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir.1980).

■ In opposition to plaintiff's request for reinstatement and back pay, defendant first argues that such remedies are inappropriate because, notwithstanding the verdict of the jury, "the evidence presented at trial clearly demonstrates that the discharge was based upon a legitimate, nondiscriminatory reason and the plaintiff could or would have been discharged in any event for reasons unrelated to his disability" and/or that "the evidence presented at trial demonstrated that the county did, in fact, make a good faith attempt to reach an accommodation with the plaintiff." Defendant's contentions directly conflict with the specific factual findings of the jury. Defendant seems to argue that the court should simply ignore the jury's findings and render its own factual determinations instead.

■ The evidence presented at trial supports the findings of the jury. There is ample evidence in the record from which a jury could conclude that in terminating plaintiff's employment, the defendant intentionally discriminated against the plaintiff on the basis of his disability. There is also ample evidence in the record from which a reasonable jury could conclude that the defendant did not make a good faith effort to make reasonable accommodations to plaintiff's disability. The court will not deny plaintiff equitable relief for reasons which directly conflict with or undermine the factual determinations of the jury.[3] *See Roebuck v. Drexel University*, 852 F.2d 715, 737 (3rd Cir. 1988) ("A trial judge should not be allowed to ignore a considered decision of a jury merely because the judge views the issues differently, for otherwise the seventh amendment right to a jury trial would be significantly attenuated."); *cf. Ways v. City of Lincoln*, 871 F.2d 750, 755 (8th Cir.1989) (because of the collateral estoppel effect which must be accorded to a jury verdict, a district court is without power to render a judgment on a Title VII claim (where no right to jury trial exists) inconsistent with a jury's findings on a § 1983 claim); *in accord Garza v. City of Omaha*, 814 F.2d 553, 557 (8th Cir.1987); *Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541, 549 n. 11 (8th Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 55 (1984).

### A. Back Pay

■ Once a plaintiff has proven discrimination, back pay should be awarded unless

**2.** 42 U.S.C. § 12117 states: "The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides ... to any person alleging discrimination on the basis of disability in violation of any provision of this chapter ... concerning employment."

**3.** Although the defendant argues in its papers that even if it was in part motivated by unlawful discrimination, plaintiff would have been fired in any event, this defense was never articulated or argued before. It would appear that defendant has waived such a defense even as to remedies. The county has never defended this action by using a "mixed motive" analysis. Under the circumstances presented in this case, and according to the manner in which the evidence was

presented by both sides at trial, the court believes that the jury's determination that the defendant was motivated by discriminatory animus is, implicitly, a finding on its part that, absent the unlawful discrimination, plaintiff would not have been terminated. Thus, in attempting to fashion the appropriate equitable relief, it would seem that the court is bound by this factual determination. However, because the full nature of the role of the jury and the court in determining liability and damages in a case such as this is unclear, the court also makes its own factual finding in this regard. The court finds that the defendant has not shown that it would have terminated plaintiff's employment in any event, for reasons unrelated to his disability, and that back pay and reinstatement should not be denied on this basis.

special circumstances are present. *Albe-marle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *Lengen v. Department of Transp.,* 903 F.2d 1464, 1468 (11th Cir.1990). "Back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co.,* 422 U.S. at 421, 95 S.Ct. at 2373. Typically, the "make-whole" relief provided for in Title VII takes the form of back pay awards. *Pitre v. Western Elec. Co., Inc.,* 843 F.2d 1262, 1274 (10th Cir.1988). Back pay may include recovery of fringe benefits or entitlements. *Lengen,* 903 F.2d at 1468.

■ In support of his request for back pay, plaintiff has presented evidence to indicate that the defendant's unlawful discrimination has caused lost income and benefits totalling $49,877.00. Defendant argues only that back pay is wholly inappropriate and appears to concede that the plaintiff's representations as to the amount of lost income and benefits is accurate. Defendant offers no evidence to rebut the accuracy of plaintiff's calculations. Instead, it contends that its good faith attempt to accommodate plaintiff's disability, and the unsettled nature of the law regarding the application of the ADA, are special circumstances which warrant the denial of back pay.

■ Defendant's arguments are not persuasive. First, the jury specifically found that defendant did not make a good faith effort to make reasonable accommodations to plaintiff. Moreover, a defendant's lack of bad faith or evil motive does not operate to preclude or weigh against an award of back pay. *See Robinson v. Lorillard Corp.,* 444 F.2d 791, 804 (4th Cir.1971); *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1321 (7th Cir.1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). Similarly unpersuasive is defendant's contention that it relied in good faith on case law indicating that its actions were lawful. The court does

not interpret existing case law to so indicate, nor does it find that the alleged "unsettled" nature of the application of the ADA warrants a denial of back pay in this case. *See Robinson,* 444 F.2d at 804.

Therefore, the court finds that plaintiff has not shown any special circumstances warranting the denial of back pay and, further, that plaintiff is entitled to an award of $49,-877.00 which includes compensation for unpaid wages and unrealized benefits including cafeteria benefits and forfeited retirement benefits.[4] *See Rosen v. Public Serv. Elec. & Gas Co.,* 477 F.2d 90, 96 (3d Cir.1973) (pension benefits included in award of back pay).

### B. Reinstatement

■ Reinstatement is generally the preferred remedy where unlawful discrimination results in discharge. *Jackson v. City of Albuquerque,* 890 F.2d 225, 231–35 (10th Cir. 1989). Reinstatement here is of course complicated by the fact that it necessarily requires the defendant to make reasonable accommodations to plaintiff's disability. What constitutes a reasonable accommodation to plaintiff's disability continues to lie at the heart of the conflict between the parties in this action.

■ Plaintiff seeks, as a reasonable accommodation, to be permitted to use accumulated vacation time to supplement sick leave, once his sick leave has been exhausted, in the manner currently permitted to be used in requesting sick leave—as opposed to vacation leave—by Johnson County. He does not ask that he be permitted more absences than any other employee with the Department of Public Works, but only that he not be required to inform the county in advance for use of his vacation time. Defendant contends that such an accommodation would impose an undue hardship on the operation of defendant's business. By rejecting this defense at trial, the jury implicitly found that allowing plaintiff to supplement his annual sick leave with unscheduled vacation leave would not be an undue hardship, as that term is defined in

---

4. This amount includes the requisite reduction for income gained from other employment since plaintiff's termination. *See* 42 U.S.C. § 2000e–

5(g) (interim earnings shall operate to reduce the back pay otherwise available).

the ADA, for the Johnson County Public Works Department. Such a finding was properly supported by the evidence at trial and the court will not disrupt this finding as it bears on the availability of equitable relief.[5]

The court believes reinstatement is appropriate in this case and is consistent with the purposes of the ADA, the standards imposed and the guidelines announced for its application. The court orders reinstatement and further orders the county to accommodate the plaintiff as follows: [6]

1. Under the conditions set forth below, plaintiff shall be permitted to supplement his sick leave with vacation leave and shall be permitted to request vacation leave in the manner the defendant currently permits for sick leave requests.

2. Plaintiff must inform the defendant on each occasion whether or not he is requesting sick leave, or vacation leave, on account of the disability-creating headaches.

3. The plaintiff and defendant shall keep track of the leave time used due to the disability-creating headaches and the amount of leave time used for other ("non-headache") causes.

4. Plaintiff may use vacation leave in the manner permitted for sick leave for absences due to the disability-creating headaches in the event that his sick leave has been exhausted for any cause.

5. Plaintiff may use vacation leave in the manner permitted for sick leave for absences due to non-headache causes up to and including the number of days that his sick leave

has been used for the disability-creating headaches.

6. Should plaintiff exhaust his sick leave for illnesses other than the disability-creating headaches, he shall not be entitled by this order to use vacation leave for any non-headache illness.

7. In no event shall plaintiff be entitled by this order to sick leave in excess of his available accrued sick leave for non-headache illnesses.

8. Should plaintiff's absenteeism exceed his combined accrued vacation and sick leave, the defendant may treat plaintiff in accordance with its present policies as it would any other employee.

9. The defendant may (upon plaintiff's reinstatement and at reasonable intervals or upon other reasonable grounds thereafter) require plaintiff to provide documentation, by a letter from a physician of his choice, that he continues to suffer the disability-creating headaches in order to allay the defendant's concern that this accommodation will permit plaintiff to abuse its leave policies.

10. In the event that plaintiff ceases to suffer a disability, the court shall retain jurisdiction to entertain a motion to modify this order accordingly.[7]

### III. Conclusion

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff is entitled to back pay and reinstatement in accordance with this order.

---

5. In fact, the defendant put on no evidence at trial which indicated any significant hardship flowing from such an accommodation.

6. This accommodation may be illustrated by the following two hypotheticals: (Assume for both examples that, under existing policies, plaintiff is entitled to ten days of sick leave.)
  (1) If plaintiff is absent ten days for non-headache illnesses, he has in effect, used all the sick leave to which he is entitled. Should he then have a disability-creating headache he may use his vacation time in accordance with this order. He is not, however, entitled, by this order, to use his vacation time for non-headache illnesses.
  (2) If plaintiff is absent five days for disability-creating headaches and five days for non-head-

ache illnesses and uses his sick leave for these absences, he would be permitted to use any vacation time otherwise available for any additional disability-creating headache related absences and would still have five days of sick leave time available for non-headache illnesses.

7. The court believes that an employer and an employee are generally in a better position than a judge to craft workplace rules or accommodations. Therefore, if the parties mutually agree that other or different accommodations or restrictions would be desirable, they may jointly present a proposal to the court for the court's consideration within twenty (20) days of the date this order is filed.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of plaintiff, William R. Dutton, in this matter.

IT IS SO ORDERED.