964 F.2d 890
 69 A.F.T.R.2d 92-1310, 92-1 USTC P 50,263
 BALL, BALL AND BROSAMER, INC., Ball and Brosamer, J.V., a
Joint Venture, Ball, Ball and Brosamer, Inc., Tax
Matters Partner, Petitioners-Appellees,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellant.
 No. 91-70047.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1992.
Decided May 14, 1992.
 
 Fielding H. Lane, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for petitioners-appellees.
 Steven W. Parks, U.S. Dept. of Justice, Washington D.C., for respondent-appellant.
 Appeal from a Decision of the United States Tax Court.
 Before: REINHARDT, NOONAN and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 In this appeal we consider the question whether profit on a construction contract should have been reported in 1983 instead of 1984 for federal income tax purposes under the completed contract method of accounting.
 
 
 2
 In 1982, the partnership of Ball, Ball and Brosamer, Inc., and Ball and Brosamer ("the partnership"), contracted with the Army to construct an extended runway, and perform related work, as part of a $500 million project for the construction of a space shuttle complex at Vandenberg Air Force Base in California. By the end of 1983, the partnership had completed almost all of its work on the project. The remaining work was completed in 1984. In that year, the Army accepted the partnership's performance under the contract. The partnership reported its profit as income in 1984.
 
 
 3
 The Commissioner determined that under the completed contract method of accounting, the partnership should have reported its profit in 1983. By administrative adjustment, it increased the partnership's 1983 income by the profit reported in 1984.
 
 
 4
 The partnership filed a petition in the tax court for readjustment of partnership items under 26 U.S.C. § 6226. The tax court determined that the partnership had not completed the contract until 1984, and therefore it had properly reported its profit in that year. Ball, Ball & Brosamer v. Commissioner, 60 T.C.M. (CCH) 587 (1990). The Commissioner appeals. We have jurisdiction under 26 U.S.C. § 7482, and we affirm.
 
 DISCUSSION
 
 5
 We review decisions of the tax court on the same basis as decisions in civil bench trials in district court, Mayors v. Commissioner, 785 F.2d 757, 759 (9th Cir.1986), with no special deference paid to the tax court's conclusions of law. Pacific First Fed. Sav. Bank v. Commissioner, 961 F.2d 800, 802-03 (9th Cir.1992).
 
 
 6
 The issue whether the partnership's contract was completed in 1983 or 1984 for income tax purposes presents a mixed question of law and fact subject to de novo review. Guy F. Atkinson Co. of Cal. v. Commissioner, 814 F.2d 1388, 1391 (9th Cir.1987) (Atkinson), cert. denied, 485 U.S. 970, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988). We note, however, that the Commissioner has latitude in the interpretation of the Internal Revenue Code. Id.
 
 
 7
 The partnership's obligations under its contract were specified as: "Removal of existing bituminous runway pavement and replacement with concrete pavement; concrete runway extension overruns and shoulders; airfield lighting and NAVAIDS; regulator building; drainage; utility relocation; laser tracking system; and other appurtenant work; towway (V-80 partial); apron (V-19)." Ball, Ball & Brosamer, 60 T.C.M. (CCH), at 588.
 
 
 8
 The partnership bid all of the work as a unit for an initial contract price of $19,976,745. During the course of the partnership's work, 57 written change orders were issued. These changes increased the contract price to $22,152,866.50.
 
 
 9
 In August 1983, a ribbon-cutting ceremony was held on the runway at Vandenberg Air Force Base in recognition of the progress made on the project. A month later, the Army took beneficial occupancy of the runway, apron and appurtenant facilities, and placed them in regular service.
 
 
 10
 In 1984, pursuant to its contract, the partnership completed the removal of existing curbing and repaving in an apron area near the mate/de-mate facility, installed shields on the runway lights, corrected electrical problems with the regulator building's emergency generator, and painted numbers on power poles near the runway. The Army accepted completion of the contract in 1984.
 
 
 11
 Payments to the partnership were based upon estimates of the partnership's progress on the job. The Army's performance report for the period ending December 31, 1983, reflected that all elements of the contract were approximately 100% complete. Using the percentage of completion method to determine substantial completion of long-term contracts, the partnership reported the entire contract price as earned on its financial statements for the period ending November 30, 1983. This resulted in a gross profit of $3,391,053. For income tax purposes, this profit was reported as earned in 1984.
 
 
 12
 Treasury Regulation § 1.451-3(d) provides that under the completed contract method of reporting income, "gross income derived from long-term contracts must be reported by including the gross contract price of each contract in gross income for the taxable year in which such contract is completed," as defined in section 1.451-3(b)(2). A long-term contract will not be "considered 'completed' until final completion and acceptance have occurred." Treas.Reg. § 1.451-3(b)(2)(i)(A) (as amended in 1986). "[A] taxpayer may not delay the completion of a contract for the principal purpose of deferring Federal income tax." Id.
 
 
 13
 Prior to 1982, the tax courts and the circuit courts of appeals differed in their interpretation of the words "final completion and acceptance." The tax courts interpreted the regulations as requiring only "substantial completion." See Ehret-Day Co. v. Commissioner, 2 T.C. 25, 34 (1943) (the regulations require that a building substantially completed in all important particulars except for minor defects be considered "completed"); Wohlfeld v. Commissioner, 17 T.C.M. (CCH) 677 (1958) (contract 98.26% complete is considered "complete" for purposes of the completed contract method of accounting); Gerwick v. Commissioner, 13 T.C.M. (CCH) 314 (1954) (contract in which 3/10 of 1% remained to be completed was "complete").
 
 
 14
 The circuit courts of appeals interpreted the phrase "finally completed and accepted" literally, requiring absolute completion. In E.E. Black, Ltd. v. Alsup, 211 F.2d 879, 880 (9th Cir.1954), we rejected the "substantial completion" doctrine applied in Ehret-Day because the doctrine imported "into the tax law an unwarranted and undesirable uncertainty." We held that even though a taxpayer received $44,000 in 1945, on a request for final payment, the contract was not finally completed and accepted until 1946 when thermostat units for the building's fire alarm system were installed and the remaining $553.50 due on the contract was paid. Id.; see also Thompson-King-Tate, Inc. v. United States, 296 F.2d 290, 293-94 (6th Cir.1961) (following E.E. Black, Ltd. in holding that substantial completion is not "final completion and acceptance" under the regulations); Rice, Barton & Fales Inc. v. Commissioner, 41 F.2d 339, 341 (1st Cir.1930) (substantial completion of a contract is not the same as finally "completed and accepted").
 
 
 15
 In 1982, Congress directed the Secretary of the Treasury to modify existing regulations in order to "clarify the time at which a contract is to be considered completed." Tax Equity and Fiscal Responsibility Act, Pub.L. No. 97-248, § 229(a)(1), 96 Stat. 324, 493 (1982). The Senate Finance Committee explained that the purpose of the legislation was to prevent unreasonable deferral of recognition of income "by reason of contractual obligations that are merely incidental to the taxpayer's obligation to build, construct, install, or manufacture the subject matter of the contract." S.Rep. No. 494, 97th Cong., 2d Sess. 200 (1982), U.S.Code Cong. & Admin.News 1982, pp. 781, 958.
 
 
 16
 In contrast to the old regulations, the amended[1] regulations provide a new, factual test for determining when "completion" occurs:
 
 
 17
 Final completion and acceptance of a contract for Federal income tax purposes is determined from an analysis of all the relevant facts and circumstances, including the manner in which the parties to the contract deal with each other and with the subject matter of the contract, the physical condition and state of readiness of the subject matter of the contract, and the nature of any work or costs remaining to be performed or incurred on the contract.
 
 
 18
 Treas.Reg. § 1.451-3(b)(2)(i)(B).[2] We apply this test and consider its three elements in order.
 
 
 19
 1. Did the parties deal with each other and with the subject matter of the contract as if the contract were completed in 1983?
 
 
 20
 The Commissioner argues that the partnership's financial statements establish that the contract was completed and accepted in 1983, because these statements reflect that 100% of the income from the job was "earned" as of November 30, 1983. We reject this argument.
 
 
 21
 Neil Wiley, a tax partner with the accounting firm that prepared the partnership's 1983 federal income tax return, testified that the partnership's 1983 financial statements were prepared under the "substantial completion" method of accounting. This accounting method does not purport to reflect the time of completion for tax purposes, nor does it reflect when the work required by a contract was actually completed and accepted.
 
 
 22
 We also reject the Commissioner's argument that the ribbon-cutting ceremony in 1983 establishes that the contract was completed at that time. The organizer of this event, Colonel Steven West, testified that the ceremony was designed as a media event. He testified that the purpose of the ceremony was to demonstrate the progress made on the runway, and on other work that was continuing with respect to the space shuttle complex. There is no evidence that the parties intended the ribbon-cutting event to signify completion of the contract.
 
 
 23
 The contract between the partnership and the Army provided for acceptance by the Army only after all work required by the contract was satisfactorily completed, inspected and accepted by the Army. The Army has steadfastly maintained that it did not accept the project as completed until 1984, despite its possession and use of the facilities in 1983. Although the Army's performance report reflected that all elements of the contract were approximately 100% complete in 1983, both Colonel West and Edward Grigsby, deputy area engineer for the Army, testified that this did not mean that all of the work under the contract had been completed, or that the work which was completed had been accepted. Grigsby stated, in a letter prepared by Paul Apodaca, the project engineer, that the Army considered the project completed and accepted in March 1984.
 
 
 24
 Nor did the partnership, prior to 1984, manifest a belief that it had completed its obligations under the contract. To the contrary, the partnership continued its work on the contract into 1984, and change orders which the Army issued as late as March 1984 were completed by the partnership that year.
 
 
 25
 In analyzing the manner in which the parties dealt with the subject matter of the contract, "any use of the primary subject matter of the contract by the purchaser (except for testing purposes that produce no gross revenue, cost savings, or other substantial benefits for the purchaser) will be considered." Id.
 
 
 26
 By the end of 1983, the entire 15,000-foot runway was being used for takeoff and landing by large aircraft, and the Army had taken beneficial occupancy of the runway, apron and appurtenant facilities. The Commissioner contends this is similar to example four in the amended regulations because the parties dealt with the subject matter of the contract, the runway, as if the contract were completed in 1983. Example four provides:
 
 
 27
 In 1983, D, a calendar year taxpayer, contracts with E to construct a shopping center and related parking areas. The shopping center is completed in October 1985. In December 1985, the shopping center and three-fourths of the parking area are opened to the general public. At that time, the entire parking area of the shopping center has been graded and three-fourths has been paved, but the final asphalt coating has not been laid due to general weather conditions. Under these circumstances, the contract to construct the shopping center and parking area is considered completed for Federal income tax purposes in December 1985, because the shopping center and a major portion of the parking area were ready to be used and were used at that time.
 
 
 28
 Id. § 1.451-3(b)(2)(i)(C).
 
 
 29
 The Commissioner argues this example stands for the proposition that "taking possession of property and placing the property in regular service takes precedence over the facts that some additional work remains to be performed and that formal acceptance has not yet occurred." Appellant's Reply Br. at 3. We disagree.
 
 
 30
 Contrary to the Commissioner's argument, the regulations do not provide that any one of the three factors specified in section 1.451-3(b)(2)(i)(B) takes precedence over the others. To the contrary, the regulations specifically require consideration of all relevant facts and circumstances, including "the nature of any work or costs remaining to be performed or incurred on the contract," "the manner in which the parties to the contract deal with each other," and the time of final acceptance. Treas.Reg. §§ 1.451-3(b)(2)(i)(A) and (B). See Stone Forest Indus., Inc. v. Robertson, 936 F.2d 1072, 1074 (9th Cir.1991) (an agency's interpretation of its own regulations should not be upheld if it is plainly erroneous or inconsistent with the language of the regulation); cf. Simpson v. Hegstrom, 873 F.2d 1294, 1299 (9th Cir.1989) (Secretary's interpretation of regulation was invalid because it was inconsistent with the Social Security Act, even though the bare language of the regulation could support that interpretation).
 
 
 31
 Here, the contract specifically provided that the possession or use of any part of the completed or partially completed work by the Army would not be deemed an acceptance of the partnership's work. See Exhibit 3-C at 48. Neither the partnership nor the Army treated the Army's occupancy or use of the runway as relieving the partnership of its continuing obligation to complete its work under the contract. Moreover, the intention of the parties as expressed by them and as manifested by the way they dealt with one another shows the work required by the contract was not completed or accepted until 1984. This intention of the parties is a critical element within the first factor of section 1.451-3(b)(2)(i)(B).
 
 
 32
 Finally, to the extent the Commissioner's argument urges us to adopt a "substantial completion" standard as the ultimate test for determining when final completion and acceptance occurs, we reject it.[3] In Atkinson, we considered the completed contract rules in light of the Commissioner's amended regulations, even though the amended regulations were not adopted until after the facts of that case arose. We reiterated E.E. Black, Ltd.'s rejection of the "substantial completion" standard. See Atkinson, 814 F.2d at 1392. Although our discussion of the amended rules and regulations in Atkinson is dicta, it is nonetheless persuasive and we do not depart from it in this case.
 
 
 33
 2. Did the physical condition and state of readiness of the subject matter of the contract indicate the contract was completed in 1983?
 
 
 34
 The partnership did not install shields on the runway lights, fix the lighting generator switch, paint numbers on the power poles, or complete the removal of existing curbing and repaving of the apron area until 1984. The Commissioner argues these were minor "punch list" items which were not significant enough to keep the contract open until 1984. We disagree.
 
 
 35
 The contract specifically required the partnership to complete the apron area and lighting for the runway. This was an integral part of the contract, and represented the Army's determination of work that had to be completed to obtain its acceptance.
 
 
 36
 Moreover, as of the end of 1983, the Shuttle Activation Task Force of the Air Force Space Division and NASA were continuing their inspection and testing of the partnership's work to determine whether it was satisfactory and what additional work remained to complete the contract. The Army was contemplating further changes under the contract, and indeed issued four additional change orders in 1984. These ongoing inspections, tests and change orders show that the contract was not completed or accepted until 1984.
 
 
 37
 3. Did the nature of any work or costs remaining to be performed indicate the contract was completed in 1983?
 
 
 38
 Although the regulations do not require it, we are encouraged to look to general principles of contract law for guidance in interpreting the phrase "final completion and acceptance." See id. Under principles of contract law pertaining to breach of construction contracts, the question whether a contractor will be liable for breach of contract depends on the impact of the breach on the injured party's expectations. See 2 E. Allan Farnsworth, Farnsworth on Contracts 416-17 (1990).
 
 
 39
 In the present case, the partnership had significant legal obligations which did not end until the Army's acceptance of the completed project in 1984. The partnership had to perform the tasks it completed in 1984 in order to complete its side of the bargain. Failure to complete these items would have been a breach of the contract, giving the Army legal recourse against the partnership and its bonding company.
 
 
 40
 The Commissioner argues the fact that the partnership was paid only $146,409 in 1984 (at least $71,906 of which was earned in 1983) on a $22 million contract shows the work remaining to be done in 1984 was insignificant. We disagree. The work completed in 1984 was required to complete the unfinished portions of the contract and change orders issued under it. Until the entire project was completed and accepted by the Army, the partnership was required to maintain performance and payment bonds to assure the Army that all of the work required under the contract was completed and paid for. The Army's progress payments made before the end of 1983 must be viewed in the context of this bonding requirement. The Army was protected not only by the amount of money it retained, but by the completion and payment bonds which remained in effect.
 
 CONCLUSION
 
 41
 The manner in which the parties dealt with each other and with the subject matter of their contract, the physical condition and state of readiness of the subject matter of the contract during the years 1983 and 1984, and the nature of the work remaining to be performed under the contract after 1983 indicate that the contract was not completed within the meaning of Treasury Regulation § 1.451-3(b)(2)(i)(B) until 1984. The decision of the tax court is AFFIRMED.
 
 
 
 [1]
 Except as otherwise provided, the amended regulations are effective for taxable years ending after December 31, 1982. See Treas.Reg. § 1.451-3(a)(7)
 
 
 [2]
 The main difference between the old regulation and the amended regulation is that the new regulation requires that "final completion and acceptance" be determined from all the facts and circumstances surrounding the contract. The language of this test differs substantially from that of the old test, which simply stated that a contact was complete when it was "finally completed and accepted."
 
 
 [3]
 In 1971, following our decision in E.E. Black, Ltd., the Commissioner proposed regulations that would have changed the standard to substantial completion. Under the proposed regulations, the requirement of acceptance would have been eliminated, and income reportable in the year in which, absent a substantial dispute as to the acceptability of the work performed, relatively insignificant costs remained. Prop.Treas.Reg. § 1.451-3(b)(2), 36 Fed.Reg. 5509 (proposed March 24, 1971). The Commissioner later withdrew these proposed regulations, opting instead to continue the "final completion and acceptance" standard in all subsequent amendments to the regulations. See 41 Fed.Reg. 2636-37 (1976); 51 Fed.Reg. 376, 379 (1986)