Anna **KENDRICK**, Plaintiff–Appellant,

v.

**JEFFERSON COUNTY BOARD OF EDUCATION**, Defendant– Appellee.

No. 92–6242.

United States Court of Appeals, Eleventh Circuit.

Feb. 11, 1994.

---

Robert L. Wiggins, Jr., Ann K. Norton, Gordon, Silberman, Wiggins & Childs, PC, Birmingham, AL, for plaintiff-appellant.

Carl E. Johnson, Jr., Bishop, Colvin, Johnson & Kent, Birmingham, AL, for defendant-appellee.

Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

CARNES, Circuit Judge:

This appeal concerns the calculation of back pay awards in 42 U.S.C. § 1983 cases. Anna Kendrick was wrongfully terminated by the Jefferson County Board of Education. The district court denied Kendrick back pay because her earnings from new employment between the time of her termination and the vindication of her rights exceeded what she would have earned during that period had she not been terminated. Kendrick appeals, arguing that the district court should have used a quarterly earnings formula instead of an aggregate earnings formula to calculate back pay. We agree and therefore reverse.

Another issue is whether a § 1983 back pay award should be calculated on a gross pay or an after-taxes, net pay basis. We hold that this issue turns on whether Kendrick's award is subject to federal, state, or local taxes, and we remand to allow the district court to address these taxation questions in the first instance.

## I. FACTS AND PROCEDURAL BACKGROUND

Anna Kendrick was a cafeteria worker employed by the Jefferson County Board of Education. After being terminated in violation of her procedural due process rights, she filed a 42 U.S.C. § 1983 complaint. The district court denied class certification, rejected the Board's statute of limitations defense, and entered summary judgment on Kendrick's behalf, ordering the Board to reinstate her. The district court denied Kendrick's request for back pay, however, on Eleventh Amendment grounds.

On appeal, we affirmed the district court's judgment insofar as it denied class certification, rejected the Board's statute of limitations defense, and held that Kendrick's termination violated her rights. We reversed the district court's holding that the Eleventh Amendment barred her claim for back pay, and we remanded the case to allow the district court to consider that claim on the merits. *Kendrick v. Jefferson County Bd. of Educ.*, 932 F.2d 910 (11th Cir.1991). On remand, the district court considered and rejected Kendrick's claim for back pay. She has appealed.

The facts are not disputed. The parties agree that the period for which back pay is to be considered is from May 14, 1985, when Kendrick was terminated, through December 31, 1991, after which she could have had her job back had she desired it. The parties have stipulated as to each of the twenty-six quarters during that period the amount Kendrick would have earned at her former job had she not been terminated and the amount she actually earned from other employment obtained following her termination. The

damage calculation issue arises from the fact that Kendrick's interim earnings were not uniform. During some quarters of the relevant period, Kendrick earned less from new employment than she would have earned from her old job had the Board not terminated her. During other quarters of the relevant period, however, Kendrick earned more from new employment than she would have earned had she not been terminated from her old job. Kendrick earned approximately $18,000 more in gross pay over the relevant six-and-a-half year period than she would have had the Board not wrongfully terminated her employment. Because of that fact, the district court held that she was not entitled to any back pay award.

## II. DISCUSSION

Kendrick contends that back pay damages under § 1983 should be based on differences in pay calculated on a quarterly basis. Under a quarterly earnings formula an employee such as Kendrick would be reimbursed for suffering during the lean quarters without being penalized for higher earnings during other quarters of the relevant damages period. More specifically, Kendrick would recover damages because in some of the twenty-six quarters during the relevant period she earned less than she would have earned had she not been terminated from her old job. The Board contends that an aggregate earnings formula should be utilized to calculate § 1983 back pay damages. Under that formula, a plaintiff who earned more over the whole period than she would have had she not been terminated would be entitled to no back pay whatsoever, regardless of how much she may have suffered during particular quarterly periods. Kendrick would recover nothing under that formula.

The parties also disagree on whether the proper measure of damages is the difference in gross pay or after-taxes, net pay. Kendrick favors a gross pay approach, the Board an after-taxes, net pay approach. If back pay is calculated using an aggregate earnings formula, the gross pay versus after-taxes, net pay question is of no moment; Kendrick will receive nothing either way. If, however, we adopt a quarterly pay formula, the amount of back pay the Board is required to pay Kendrick will depend on whether the difference

is measured in terms of gross pay or after-taxes, net pay. We address each of these two issues in turn.

## A. THE DAMAGES FORMULA

■ The situation presented arises in a wrongful termination or refusal to hire case when the prevailing plaintiff had, during some but not all of the relevant damages period, income from a new job that exceeded that which she would have earned at the terminated or denied job. The question is how the new employment income is to be offset against lost wages from the old job. The Supreme Court addressed this question forty years ago in *NLRB v. Seven–Up Bottling Co.*, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953). The *Seven–Up* Court reversed the court of appeals, which had adopted an aggregate pay approach, and instead upheld the National Labor Relations Board rule that offsetting should be done on a quarterly basis. The Court approved the following formula:

> Loss of pay shall be determined by deducting from a sum equal to that which [the employee] would normally have earned for each such quarter or portion thereof, [her] net earnings, if any, in other employment during that period. Earnings in one particular quarter shall have no effect upon the back-pay liability for any other quarter.

*Id.* at 345, 73 S.Ct. at 288 (citation omitted). In *Seven–Up*, the Supreme Court could have adopted the aggregate earnings formula that the Board of Education favors and that the district court adopted in this case, but it did not do so. *Id.* at 346, 73 S.Ct. at 288.

Thirty years after *Seven–Up*, this Court adopted for Title VII cases the quarterly earnings formula from the NLRA case law. In *Darnell v. City of Jasper*, 730 F.2d 653 (11th Cir.1984), the plaintiff was denied employment as a police officer because of his race. In two of the nine years he had been without the police officer's job the plaintiff earned less than he would have as an officer; in the other seven years he earned more. *Id.* at 656. This Court reversed the district court's holding that because the plaintiff had earned more throughout the period as a

whole, he was not entitled to any back pay. In *Darnell* we chose not to adopt for Title VII purposes the aggregate earnings formula that the Board favors and the district court adopted in this case. Instead, we adopted for Title VII purposes the quarterly earnings formula from the NLRA cases. We explained:

> Although we have discovered no cases applying the "quarterly earnings formula" in the context of a Title VII action, we conclude that such a formula more faithfully serves the remedial objectives of Title VII and, in any case, promotes the consistent application of back pay awards rendered under both Title VII and the NLRA.

*Id.* at 657. Exactly the same is true here. Although we have not discovered any cases applying the quarterly earnings formula in the context of a § 1983 action, we believe that such a formula more faithfully serves the remedial objectives of § 1983. Also, the quarterly earnings formula promotes the consistent application of back pay awards rendered under the NLRA, Title VII, and § 1983. We think this consistency is valuable in itself, making the law more simple, understandable, and predictable.

The district court did not ignore our decisions adopting the quarterly earnings formula in NLRA and Title VII cases. Instead, it sought to distinguish those decisions on the basis of whether the legal violation that caused the injury was "intentional, invidious discrimination based on race or other classifications," or was instead based upon "honest, if mistaken", conduct. We are not persuaded by that attempted distinction. The quarterly earnings formula was first approved in *NLRB v. Seven–Up Bottling Co.,* a case that did not involve race-based or otherwise invidious discrimination. Our opinion in *Darnell* did not imply that the quarterly earnings formula is appropriate only when the injury was intentionally inflicted. Instead, we explained that that formula was appropriate because it "more faithfully serves the remedial objectives of Title VII." 730 F.2d at 657. The principal objective of a § 1983 damage award, to compensate the injured plaintiff fully and fairly, is the same as that of a Title VII damage award. It follows that the quarterly earnings formula will more faithfully serve that objective in a § 1983 case, just as

it does in a Title VII case. Finally, we reject any linkage between the defendant's *mens rea* and the damages formula when compensatory, not punitive, damages are being awarded. Except when a valid defense is available, a plaintiff who has been injured because of a violation of her constitutional rights should be compensated for that injury, even if the defendant thought it was not violating the Constitution. Being told that the violation of her constitutional rights was based on an honest mistake will be little consolation to a terminated employee who had to struggle to pay the rent and buy groceries. The defendant tortfeasor made the mistake, not the innocent plaintiff, and absent a valid defense, it is the defendant tortfeasor who should pay the damages caused by that mistake. Those damages should be calculated in this case using the same quarterly earnings formula as in NLRA and Title VII cases.

We have given careful consideration to the concurring opinion's suggestion that it might be preferable to calculate the damages in § 1983 cases based upon a formula focusing on each pay period and having a carry forward but not back feature. Neither party suggested that formula, and we are unaware of any decision anywhere that has adopted it. Nor are we persuaded that it will result in a more accurate calculation of actual loss than the quarterly earnings formula. Every contention proffered in support of this novel formula is equally applicable to Title VII and NLRA damages, which have long been calculated on a quarterly basis.

The question of which formula to use is not one to which there is clearly a right or wrong answer. The policy considerations overlap sufficiently and the results in varying circumstances differ enough, that the correct resolution is debatable among jurists of reason. But that debate has already been conducted and resolved in NLRA and Title VII cases. When we adopted for Title VII cases the NLRA quarterly earnings formula, we said that doing so "promotes the consistent application of back pay awards rendered under both Title VII and the NLRA." *Darnell,* 730 F.2d at 657. Because consistency in legal rules and results is a vital part of our aspira-

tion toward equal justice under law, materially identical situations should be governed by the same rules absent a compelling reason for disparity. The rule we adopt furthers that goal.

## B. THE GROSS PAY VERSUS AFTER-TAXES NET PAY ISSUE

■ Applied to the facts of this case, our holding that § 1983 damages are to be calculated using a quarterly earnings formula means that Kendrick is due some damages. That result requires us to decide whether the damages are to be paid on the basis of the difference in gross pay or instead on the basis of the difference in net or after-taxes pay.

In *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 534, 103 S.Ct. 2541, 2549, 76 L.Ed.2d 768 (1983), a Longshore and Harbor Workers' Compensation Act case, the Supreme Court held that, "[s]ince the damages award is tax-free, the relevant stream is ideally of *after-tax* wages and benefits." Likewise, in *Norfolk & Western Railway v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), a Federal Employers' Liability Act (FELA) case, the Supreme Court rejected the contention that the measure of damages should be based on the amount of gross pay that was lost. The Court reasoned that because after-tax income, not gross income, provides the only realistic measure of a wage earner's ability to support his family, it "follows inexorably that a wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies." *Id.* at 493–94, 100 S.Ct. at 757. Kendrick has offered no convincing reason why we should not apply the same rule here. The purpose of compensatory damages in a § 1983 case, as in a Longshore and Harbor Workers' case and a FELA case, is to make the plaintiff whole for the loss inflicted upon her by the defendant, not to make her more than whole. If the damage award is not taxable, paying damages in terms of gross pay would overcompensate the plaintiff in a § 1983 case, just as it would in the other cases. On the other hand, if the damage award is taxable, awarding the plaintiff the difference in net earnings, or after-taxes pay, would undercompensate her, because the award would be reduced further by

the amount of the taxes on it, leaving her less than whole. Therefore, it is necessary to determine whether a § 1983 back pay award is taxable in order to determine the proper amount of that award.

The issue of whether Kendrick's § 1983 back pay award will be subject to taxation is complicated by the fact that her earnings before termination, which the award is designed to replace, were subject to federal income tax, FICA tax, state income tax, and county or municipal tax. To calculate accurately the amount of damages she is due one must decide whether Kendrick's award will be subject to any or all of those taxes. We are not aware of any controlling authority that answers that question as to any of the taxes. *United States v. Burke,* —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), held that back pay awards in pre–1991 Title VII cases are subject to federal income tax and are not excludable from taxable income under 26 U.S.C. § 104(a)(2) as damages received "on account of personal injuries." It may be that that decision should be applied to § 1983 back pay awards as well. Perhaps not. At least three other circuits have held, albeit in pre-*Burke* decisions, that § 1983 back pay awards are not subject to federal income taxation. *See Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1579–80 (5th Cir.1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990); *Wulf v. Wichita,* 883 F.2d 842 (10th Cir. 1989); *Bent v. Commissioner,* 835 F.2d 67 (3d Cir.1987); *see also Wilson v. Garcia,* 471 U.S. 261, 276, 279, 105 S.Ct. 1938, 1947, 1949, 85 L.Ed.2d 254 (1985) (characterizing "all § 1983 actions as involving claims for personal injuries"). Whatever the resolution of the federal income tax issue, the Supreme Court has indicated that FICA taxation may be a different matter. *See Burke,* —— U.S. at —— n. 1, 112 S.Ct. at 1869 n. 1 (reserving the issue of whether back pay awarded under Title VII constitutes wages subject to FICA taxation). The possibility of state and local taxation of § 1983 back pay awards raises more unresolved issues.

The district court has not had an opportunity to decide any of these taxation issues

which must be resolved before the back pay award in this case can be calculated. We deem it unwise to decide these issues in the first instance. The parties have devoted a combined total of only seven pages of briefs to the gross versus net pay issue, and together they have cited only one tax case. Whether § 1983 back pay awards are subject to federal income tax is an important tax question, but the Internal Revenue Service has not been heard from in this case. Given the IRS's expertise and its statutory responsibility, courts should be reluctant to decide important tax questions without giving the IRS an opportunity to express its views. On remand, the district court should provide the IRS and the relevant state and local taxing authorities with an opportunity to express their views, through an appropriate means such as *amicus curiae* participation, on the taxation issues within their area of responsibility. Of course, the district court is not bound in any way by such views and retains the authority and duty to decide the issues.

## C. REMAND INSTRUCTIONS

On remand, the district court is to award Kendrick damages based upon a quarterly earnings formula. Under that formula, Kendrick will receive some damages for each of the quarters during the relevant period when her new employment earnings were less than her earnings would have been had she not been terminated. The amount of the damages Kendrick receives for each of those quarters will depend upon whether the award is subject to taxation and, if so, how much. For each of the quarters, the district court is to award Kendrick an amount that will ensure that the sum of her after-taxes award and her after-taxes earnings from her new employment will equal the after-taxes earnings she would have received from her old employment had she not been terminated.

## III. CONCLUSION

The district court's order denying Kendrick back pay is REVERSED. The case is REMANDED for further proceedings consistent with this opinion.

HILL, Senior Circuit Judge, concurring dubitante:

I concur, without further comment, as to all except the damages calculation, IIA.

I concur with some hesitation, in IIA. Our holding conforms to precedent but may not be demanded by it. I suggest that, in an appropriate case, we might continue the work done in *N.L.R.B. v. Seven–Up Bottling Co.* 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953) and in *Darnell v. City of Jasper,* 730 F.2d 653 (11th Cir.1984). As I read them, those cases represent the choice between calculating awards for lost earnings by the aggregate earnings formula and the quarterly earnings formula—the latter being the clear choice.

The aggregate earnings formula is denounced. Were we to presume to improve damage calculation by re-adopting that method, we should be in improper conflict with controlling precedent.

I believe, however, that no other method of calculating damages has been ruled out. None other is even discussed by The Court or in our *Darnell* case. If a better formula than the quarterly earnings formula (other than, of course, the aggregate earnings formula) were put forward, I apprehend that we might consider it.

Since working on *Darnell* I have felt that improvement might well be possible. If so, we shall require more counselling than presented to us here. Nevertheless, I proffer the following.

The aggregate earnings formula defines the actual lost earnings with mathematical precision. It would be attractive, but it discourages settlement with, or reemployment of, the wronged employee. It does so because it applies what I call a "spread back" of post-discharge earnings. So, if a wrongfully discharged employee should go for one year without employment, but, then, obtain work at twice the earnings previously enjoyed, at the end of the second year there would be no damages. The "excess" earned in the second year would be "spread back" over the first year to the end that the wronged employee who had endured a year without earnings would be entitled to take nothing. The de-

fendant would do well to delay and delay, fishing for such a result.

The quarterly earnings formula provides for no "spread" of "excess" earnings at all. It does the employer no good at all to postpone settling up while the employee is earning nothing—or less than the lost earnings. The employer is going to pay for those lost earnings whether or not the plaintiff does better later. This is a beneficial result. When a pay period's wages are lost, damages calculation should include that loss. There should be no "spread back."

But I see no merit in the windfall of damages that might well result from the absence of a "spread forward." If, for a spell, the employee has post-discharge earnings in excess of those during employment, the excess should not cancel out any damages already suffered, but the excess should result in the accumulation of no further damages until it has been "used up" by being applied to subsequent periods of no or reduced earnings. Making these calculations on a "pay period" basis would seem appropriate. If the wronged employee had a bi-weekly pay period, examination should be made of post-discharge earnings on a bi-weekly basis to determine damages or mitigating earnings, spread forward if indicated.

I do not dissent from our failure to adopt such a calculation in this case. It has not been put into issue by the parties. They debate aggregate earnings versus quarterly earnings and quarterly earnings prevail. I suggest that they are not set in binding concrete.