John A. SCHMITZ, Mary B. Schmitz,
Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellant.

No. 93–70960.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1994.

Decided Aug. 30, 1994.

Gary R. Allen and Edward T. Perelmuter, Tax Div., U.S. Dept. of Justice, Washington, DC, for respondent-appellant.

Thomas F. Joyce, Bell, Boyd & Lloyd, Chicago, IL, for petitioners-appellees.

Before: GOODWIN, FERGUSON and TROTT, Circuit Judges.

Opinion by Judge GOODWIN; Concurrence by Judge TROTT.

GOODWIN, Circuit Judge:

The Commissioner appeals a tax court summary judgment granted in favor of taxpayers John and Mary Schmitz. The Commissioner argues that damages the Schmitzes received in settlement of an Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., lawsuit are taxable income. The tax court held that the Schmitzes' ADEA settlement was excludable from gross income as "damages received ... on account of personal injuries or sickness." 26 U.S.C. § 104(a)(2) (1988). We affirm.

I.

John Schmitz is a former employee of United Airlines, Inc. ("United") and a plaintiff in an ADEA class action against United. In 1986, United paid Schmitz $115,050 in settlement of his age discrimination claims. According to the settlement agreement, half of this payment was "back pay" and the other half was "ADEA liquidated damages."

The Schmitzes initially reported the back wages portion of the settlement as gross income received in 1986, excluding the liquidated damages. The Commissioner issued a notice of deficiency, alleging that the Schmitzes' entire award was taxable. The Schmitzes filed a tax court petition, arguing that the liquidated damages portion of the settlement was excludable from gross income under 26 U.S.C. § 104(a)(2). After the Third Circuit decided Rickel v. Commissioner, 900 F.2d 655 (3d Cir.1990), the Schmitzes amended their petition, claiming that both the back pay and the liquidated damages were excludable.

The tax court held that the Schmitzes' entire settlement was excludable from gross income under Downey v. Commissioner, 97 T.C. 150, 1991 WL 140900 (1991), aff'd on reconsideration, 100 T.C. 634, 1993 WL 231740 (1993), reversed by, 33 F.3d 836 (7th Cir.1994). The Commissioner appealed.

II.

We review tax court decisions on the same basis as civil bench trials held in federal district court. Ball, Ball, & Brosamer, Inc. v. Commissioner, 964 F.2d 890, 891 (9th Cir.1992). Thus, we review the tax court's grant of summary judgment de novo to determine whether there are any genuine issues of material fact and whether the tax court correctly applied the law. Stevens v. Moore Business Forms, Inc., 18 F.3d 1443, 1446 (9th Cir.1994). Because this case presents no genuine issues of material fact, we agree that summary judgment was appropriate. We therefore review the tax court's legal conclusions de novo, Pacific First Fed. Savs. Bank v. Commissioner, 961 F.2d 800, 803 (9th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 209, 121 L.Ed.2d 150 (1992), construing the relevant exemptions narrowly in favor of taxation. United States v. Centennial Savs. Bank, 499 U.S. 573, 583–84, 111 S.Ct. 1512, 1518–19, 113 L.Ed.2d 608 (1991); United States v. Wells Fargo Bank, 485 U.S. 351, 354, 108 S.Ct. 1179, 1181–82, 99 L.Ed.2d 368 (1988).

### III.

At the time of the Schmitzes' settlement,[1] § 104(a)(2) provided:

§ **104. Compensation for injuries or sickness**

... [G]ross income does not include—... (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness....

IRS regulations define "damages received" as "amount[s] received ... through prosecution of a legal suit or action based upon tort or tort-type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104–1(c) (1993).

■ In *Hawkins,* we set forth a two-part test for determining whether damages received in a lawsuit are excludable under § 104(a)(2) (1988). *United States v. Hawkins,* 30 F.3d 1077, 1083 (9th Cir.1994). We said a taxpayer must show both (1) that the underlying cause of action was tort-like within the meaning of *United States v. Burke,* —— U.S. ——, ——, 112 S.Ct. 1867, 1870, 119 L.Ed.2d 34 (1992), and 26 C.F.R. § 1.104–1(c), and (2) that the damages were received "on account of" the taxpayer's personal injury. *Id.* We must therefore decide (A) whether ADEA creates a tort-like cause of action and (B) whether the Schmitzes' back pay and liquidated damages were received on account of their personal injuries.

#### A. *ADEA Creates a "Tort-like" Cause of Action.*

■ Until recently, the case law firmly established that ADEA lawsuits were "tort-like" within the meaning of § 104(a)(2) and 26 C.F.R. § 1.104–1(c). *See Redfield v. Insurance Co. of North America,* 940 F.2d 542

(9th Cir.1991); *Pistillo v. Commissioner,* 912 F.2d 145 (6th Cir.1990); *Rickel v. Commissioner,* 900 F.2d 655 (3d Cir.1990); *Downey v. Commissioner,* 97 T.C. 150, 1991 WL 140900 (1991). However, these cases relied on *Threlkeld v. Commissioner,* 87 T.C. 1294, 1308, 1986 WL 22061 (1986), *aff'd* 848 F.2d 81 (6th Cir.1988), which held that damages are excludable under § 104(a)(2) if they were "received on account of any invasion of rights that an individual is granted by being a person in the sight of the law."

The Supreme Court recently changed this analysis, suggesting that even lawsuits which meet the *Threlkeld* test might not be tort-like for purposes of § 104(a)(2) if they do not "evidence[ ] a tort-like conception of injury and remedy." *United States v. Burke,* —— U.S. ——, ——, 112 S.Ct. 1867, 1873, 119 L.Ed.2d 34 (1992). The Court, discussing damages awarded under the pre–1991 version of Title VII, agreed that "discrimination could constitute a 'personal injury' for purposes of § 104(a)(2)." *Id.* However, the Court found that the pre–1991 version of Title VII was not tort-like because it did not provide for jury trials or "allow awards for compensatory or punitive damages," instead "limit[ing] available remedies to back pay, injunctions, and other equitable relief." *Id.* at —— – ——, 112 S.Ct. at 1873–74.[2] According to the Court, this unavailability of jury trials and failure to "recompense Title VII plaintiffs for anything beyond the wages properly due them" distinguish pre–1991 Title VII actions from ordinary tort actions and actions filed under other federal antidiscrimination statutes, such as Title VIII and 42 U.S.C. § 1981. *Id.* at ——, 112 S.Ct. at 1874.

Most post-*Burke* courts addressing the issue have held that ADEA damages are still

---

1. Congress has since amended § 104(a)(2) to provide that punitive damages received in cases not involving physical injury are not excludable. Pub.L. No. 101–239, § 7641(a), 103 Stat. 2379 (1989). However, these amendments are expressly limited to punitive damages received after June 10, 1989, and do not apply to the Schmitzes' 1986 award. We express no opinion on taxation of ADEA liquidated damages received after June 10, 1989, as that issue is not before us.

2. Congress has since amended Title VII to allow jury trials, compensatory damages, and punitive damages. Civil Rights Act of 1991, Pub.L. 102–166, 105 Stat. 1071 (1991). Thus, the current version of Title VII may redress a tort-like personal injury. *See Burke,* —— U.S. at —— n. 12, 112 S.Ct. at 1874 n. 12; Rev.Rul. 93–88.

excludable, even under the Supreme Court's more restrictive test. *See, e.g., Purcell v. Sequin State Bank & Trust Co.,* 999 F.2d 950, 960–61 (5th Cir.1993); *Downey v. Commissioner,* 100 T.C. 634, 637, 1993 WL 231740 (1993); *Bennett v. United States,* 30 Fed.Cl. 396 (1994); *Rice v. United States,* 834 F.Supp. 1241, 1243–45 (E.D.Cal.1993), *appeal pending,* No. 93–16272 (9th Cir. Sept. 9, 1993); *cf. Abrams v. Lightolier,* 841 F.Supp. 584, 596 (D.N.J.1994) (addressing a state law age discrimination award).[3] As these courts have noted, ADEA, unlike the pre–1991 version of Title VII, provides for jury trials. *Bennett,* 30 Fed.Cl. at 399. In addition, while ADEA does not provide for nonpecuniary compensatory damages or punitive damages "by name", *Rice,* 834 F.Supp. at 1244, it does provide for "liquidated damages" in cases of willful discrimination. 29 U.S.C. § 626(b). These liquidated damages "serve to compensate the victim of age discrimination for certain nonpecuniary losses" and also serve "a deterrent or punitive purpose." *Downey,* 100 T.C. at 637; *Rice,* 834 F.Supp. at 1244. Thus, unlike the unamended version of Title VII, ADEA does not simply recompense plaintiffs for the wages properly due them.

The Commissioner argues that the remedies available under ADEA are still "circumscribed" within the *Burke* Court's meaning, *Burke,* —— U.S. at ——, 112 S.Ct. at 1873, because, like the unamended version of Title VII, ADEA does not provide damages for plaintiffs' emotional distress or pain and suffering. *See Chancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1318 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Naton v. Bank of California,* 649 F.2d 691, 698–99 (9th Cir.1981). The Commissioner argues that ADEA liquidated damages represent only punitive damages, and thus the statute does not evidence a tort-like conception of remedy.

We disagree. The case law and legislative history indicate that ADEA liquidated damages have a compensatory as well as a punitive purpose. *See* Section B, *infra.* In addition, "*Burke* does not require that a statute

provide the complete spectrum of tort remedies before it may be deemed to redress a tort-type right." *Bennett,* 30 Fed.Cl. at 400. As other courts have held, ADEA's liquidated damages provision, as well as its provision for jury trials, distinguishes ADEA from the statute discussed in *Burke.* Moreover, even if ADEA liquidated damages have a punitive purpose, such a purpose appears more tort-like than contract-like.

We cannot accept the Commissioner's argument that ADEA actions are basically *ex contractu. See, e.g., Redfield,* 940 F.2d at 546 ("Nothing in ADEA reflects a congressional attempt to rewrite the terms of employment contracts."). Contract rights arise from the parties' private-law relationship; each litigant's rights and duties depend primarily on the terms of their agreement. In contrast, a tort is "a 'legal wrong committed upon the person or property independent of contract' … 'a violation of some duty owing to the plaintiff, … generally, [arising] by operation of law and not by mere agreement of the parties.'" *Downey,* 97 T.C. at 160 (quoting Black's Law Dictionary, 1489 (6th ed. 1990)). The public-law duty not to discriminate exists regardless of the parties' contractual relationship; ADEA applies not only to firing and promotion decisions, but also to hiring decisions, when no contract exists. *Downey,* 97 T.C. at 169; *Burke,* —— U.S. at ——–——, 112 S.Ct. at 1879–80 (O'Connor, J., dissenting). For convenience and for statute of limitations purposes, most courts classify discrimination and civil rights violations as torts. *See, e.g., Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987); *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985).

The *Burke* majority acknowledged that discrimination could be a personal injury tort within the meaning of § 104(a)(2), as the pre-*Burke* courts had long held. —— U.S. at ——, 112 S.Ct. at 1873. The Court did not hold that employment discrimination, generally, was not a personal injury; it held only that the pre–1991 version of Title VII, with its "circumscribed remedies," did not evi-

---

**3.** *But see Maleszewski v. United States,* 827 F.Supp. 1553 (N.D.Fla.1993) (ADEA not tort-

like); *Shaw v. United States,* 853 F.Supp. 1378, (M.D.Ala.1994) (following *Maleszewski* ).

dence a tort-like conception of personal injury. *Id.* at ——, 112 S.Ct. at 1873. In reaching this conclusion, the Court specifically relied on the unavailability of jury trials and the lack of compensatory or punitive damages in Title VII actions. Because both of these remedies are available under ADEA and because discrimination constitutes a personal injury, we conclude that ADEA establishes a tort-like cause of action within the meaning of *Burke* and § 104(a)(2).

### B. *The Schmitzes' ADEA Liquidated Damages Were Received "On Account of" Personal Injuries.*

■ The Commissioner also argues that, even if ADEA creates a tort-like cause of action, the Schmitzes' *liquidated* damages are not excludable because these damages were awarded "on account of" United's willful misconduct, rather than "on account of" the Schmitzes' personal injury. § 104(a)(2).[4] We agree that § 104(a)(2)'s "on account of" language, as well as its title, "Compensation for Personal Injury or Sickness," implies that damages are not excludable unless they have some compensatory purpose and bear some relationship to the taxpayer's underlying personal injury. *Hawkins,* 30 F.3d at 1084; *see also Reese v. United States,* 24 F.3d 228

(Fed.Cir.1994); *Commissioner v. Miller,* 914 F.2d 586 (4th Cir.1990); *Rice,* 834 F.Supp. at 1245–46; Rev.Rul. 84–108.[5]

■ However, we do not agree that ADEA liquidated damages are solely punitive in nature or that they do not bear any relation to the underlying personal injury. ADEA on its face provides for *"liquidated,"* not punitive, damages. 29 U.S.C. § 626(b). Liquidated damages were traditionally awarded to compensate victims for damages which are too obscure and difficult to prove. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945) ("The liquidated damage provision [of the Fair Labor Standard Act, on which ADEA is based] is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimates other than by liquidated damages."); *Overnight Motor Transp. Co., Inc. v. Missel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1223, 86 L.Ed. 1682 (1942) ("[L]iquidated damages ... are compensation, not a penalty or punishment by the Government ... the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liqui-

---

4. The Commissioner does not make this argument about the Schmitzes' back pay award, apparently conceding that, if ADEA creates a tort-like cause of action, the Schmitzes' back pay or nonliquidated damages are excludable. We agree. Although this rule creates the somewhat anomalous result that back-pay and future earnings awarded in a lawsuit are not taxable, while "wages ... paid in the ordinary course [of employment]" are fully taxable, *Burke,* —— U.S. at ——, 112 S.Ct. at 1874, this anomaly exists in physical injury cases as well. *Id.* at ——, 112 S.Ct. at 1880 (O'Connor, J., dissenting). As the Third Circuit has noted, we must compare John Schmitz not to a current United employee, but to a United employee who can no longer work because of a lost arm or other personal injury. *See Rickel,* 900 F.2d at 664 ("Of course, it might be troubling to some that a successful plaintiff in an ADEA suit will make out better, vis-a-vis federal income tax liability, than if the plaintiff had not been discriminated against in the first place.... [However,] the successful ADEA plaintiff is being treated no better (or worse now) than the typical tort victim who suffers a physical injury").

Under § 104(a)(2), if a taxpayer receives damages for a personal injury "[a]ll income [includ-

ing lost wages] in compensation of that injury is excludable under section 104(a)(2)." *Threlkeld,* 848 F.2d at 84. *See also Burke,* —— U.S. at ——, 112 S.Ct. at 1880 (O'Connor, J., dissenting); *Purcell,* 999 F.2d at 960 ("Back pay awards are nontaxable when they redress a tort-like injury."); *Redfield,* 940 F.2d at 546; *Pistillo,* 912 F.2d at 150; *Rickel,* 900 F.2d at 664 ("[J]ust as in the case of a physical personal injury, all the damages received by the taxpayer on account of age discrimination are excludable under § 104(a)(2)"); *Downey,* 97 T.C. at 165–69.

The Commissioner does not indicate whether United paid Federal Insurance Contributions Act ("FICA") taxes on the backpay award; thus, we express no opinion on whether backpay received under ADEA constitutes "wages" for FICA purposes. *See Burke,* —— U.S. at —— n. 1, 112 S.Ct. at 1869 n. 1; *Kendrick v. Jefferson County Bd. of Ed.,* 13 F.3d 1510, 1514 (11th Cir.1994) (interpreting the Supreme Court's footnote as an "indicat[ion] that FICA taxation may be a different matter").

5. *But see Horton v. Commissioner,* 100 T.C. 93, 1993 WL 28557 (1993), affirmed by, 33 F.3d 625 (6th Cir.1994).

dated damages."); *see also Black's Law Dictionary 6th Ed.* at 391 (1990) (liquidated damages, unlike penalties, represent a "good faith effort to estimate [the] actual damages that will probably ensue").

The concurrence contends that the term "liquidated," despite its appearance in the text of the statute, is a "misnomer," and that ADEA liquidated damages are in fact punitive damages.[6] However, ADEA liquidated damages differ from common law punitive damages in significant ways. More importantly, we believe that looking beyond Congress's explicit language and attempting to discern whether Congress's "real purpose" was punitive or compensatory will "sow more confusion than clarification." If Congress said "liquidated," we will assume that Congress meant liquidated.

Nor do we believe that the "liquidated" label is in fact a misnomer. Unlike common law punitive damages, ADEA liquidated damages do bear a relation to the underlying personal injury: They must equal the plaintiff's total pecuniary loss. 29 U.S.C. § 626(b); *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1348–49 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988). Thus, unlike the punitive damages discussed in *Hawkins,* which were based on the defendant's conduct and wealth, and have no relation to the plaintiff's particular injury, ADEA liquidated damages are proportionate to the personal injury suffered: The more severe the plaintiff's economic injury, the greater her ADEA liquidated damage award.

As the Commissioner and the concurrence emphasize, ADEA liquidated damages likely also have a punitive purpose—they are available only for "willful" violations and serve not only to compensate but also to deter. *See*

*Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985) (stating, in interpreting ADEA's "willfulness" requirement, that "Congress intended [ADEA] liquidated damages to be punitive in nature"); *Criswell v. Western Airlines, Inc.,* 709 F.2d 544, 556 (9th Cir. 1983), *aff'd* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (stating, in a different context, that "[l]iquidated damages are a substitution for punitive damages and [are] intended to deter intentional violations of the ADEA") (internal quotations and citations omitted).[7]

However, the mere fact that liquidated damages are available in cases of "willful" discrimination does not transform them into punitive damages or eliminate their compensatory purpose. *Accord, Rivera v. Anaya,* 726 F.2d 564, 569 (9th Cir.1984) (interpreting a similar double damage provision as "compensation, not a penalty" even though the damages at issue were available only for "intentional violations."). In enacting ADEA, Congress was likely attempting to balance the need to compensate victims and deter discrimination with the need to protect businesses from crushing liability. Unlike the concurrence, we see nothing "peculiar" in Congress's decision to resolve these competing interests by compensating victims of willful discrimination at a higher rate than victims of "nonwillful" discrimination: Congress has simply decided as a public policy matter that only victims of willful discrimination should receive obscure and difficult to prove compensatory damages.

■ For purposes of § 104(a)(2), the proper inquiry is not the damages' relationship to the tortfeasor, but their relation to the taxpayer. *See Downey,* 97 T.C. at 171.

---

**6.** In support of this assertion, the concurrence states that ADEA liquidated damages are distinguishable from FLSA liquidated damages because the former are awarded only for "willful" violations, while (according to the concurrence) latter are awarded "automatically." However, as the concurrence concedes in a footnote, FLSA also gives the judge discretion not to award liquidated damages (or to award reduced liquidated damages), if the violation is *not* willful. Thus, the difference between these two damages provisions is not nearly as great as the concurrence

suggests: In ADEA, plaintiffs get liquidated damages if the violation was willful; in FLSA, they get liquidated damages unless the employer proves that the violation was not willful. While the burden of proof may differ, under both statutes, liquidated damages depend on the culpability of the employer.

**7.** *See also Riechman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 281–82 (2d Cir. 1987); *Lindsay v. American Cast Iron Pipe, Co.,* 810 F.2d 1094, 1102 (11th Cir.1987).

Like the *Downey* Court, we do not believe *Thurston* addressed ADEA liquidated damages "from the *recipient's* perspective" or found that ADEA liquidated damages, from the recipient's perspective, do not represent "compensation for those losses that are hard to calculate." *Id.* Rather, most courts recognize that ADEA liquidated damages serve *both* a compensatory and a deterrent function.[8] *See, e.g., Fortino v. Quasar, Co.,* 950 F.2d 389, 397–98 (7th Cir.1991); *Powers v. Grinnell Corp.,* 915 F.2d 34, 41–42 (1st Cir. 1990); *Burns v. Texas City Refining, Inc.,* 890 F.2d 747, 753 (5th Cir.1989); *Gilmer v. Interstate/Johnson Lane Corp.,* 895 F.2d 195, 200 (4th Cir.1990); *Graefenhain v. Papst Brewing Co.,* 870 F.2d 1198, 1205 (7th Cir. 1989); *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 382 (3d Cir.1987). The Conference Report for the 1978 Amendments to ADEA supports this view:

> [ADEA] liquidated damages (calculated as an amount equal to the pecuniary loss) [ ] compensate the aggrieved party for nonpecuniary losses arising out of a willful violation of the ADEA.
>
> ... The ADEA as amended by this act does not provide remedies of a punitive nature.

H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* 1978 U.S.C.C.A.N. 528, 535.

The concurrence worries that we are holding that "large awards (which we may think are excessive) are taxable (*e.g., Hawkins* ), but small awards (which we may think are more reasonable) are not taxable (*e.g.,* this case)." Whatever the emotional appeal of such a rule, we agree with the concurrence that it would be utterly unworkable and we would not suggest it. Our test is not "how big is the award," but "does it have a compensatory purpose?" Liquidated damages are traditionally compensatory; punitive damages are not. Thus, ADEA liquidated damages are nontaxable; punitive damage awards such as those discussed in *Hawkins* are. *Accord, Miller,* 914 F.2d at 591.

Because ADEA liquidated damages serve both to punish the employer and to compensate the taxpayer for intangible losses, and because Congress chose to label them "liquidated" rather than "punitive", ADEA liquidated damages are, from the taxpayer's perspective, damages received on account of personal injury. They are therefore excludable under § 104(a)(2). *Accord, Miller,* 914 F.2d at 591; *Bennett,* 30 Fed.Cl. at 401; *Downey,* 100 T.C. at 634.

**AFFIRMED.**

TROTT, Circuit Judge, concurring in the judgment:

I agree with the majority's conclusion that all damages received in settlement of an ADEA claim are excludable from gross income under § 104(a)(2) of the Internal Revenue Code. As I explained in my dissent in *Hawkins v. United States,* 30 F.3d 1077, 1085 (9th Cir.1994), I respectfully disagree with the majority's adoption of a two-part test for analyzing whether damages are excludable under § 104(a)(2). Like the Tax Court, I believe the focus should be on whether the

---

**8.** The concurrence asks "what's left to compensate?", citing cases holding that ADEA liquidated damages do not duplicate state damage awards for lost interest, emotional distress, and pain and suffering. However, we have also said that "[p]unitive ... damages ..., unavailable under the ADEA, do not duplicate the ADEA award for back pay, lost benefits, and liquidated damages." *Chancellier,* 672 F.2d at 1318. Moreover, exactly what injuries ADEA liquidated redress will inevitably vary from case to case; none of the cases the concurrence cites involve plaintiffs who were compensated for all of the damages mentioned. ADEA liquidated damages might compensate some plaintiffs for the emotional distress and future psychic injuries they may suffer upon return to work, for lost future wages which they cannot mitigate, for lost reputation, for their families' emotional distress and suffering, for the psychic toll of suing one's employer or any number of other injuries. *Cf. Brooks v. Hilton Casinos Inc.,* 959 F.2d 757, 767 (9th Cir.1992) (trial court did not abuse its discretion in refusing to award front pay where plaintiff received liquidated damages), *cert. denied,* — U.S. ——, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992); *Cancellier,* 672 F.2d at 1319 (value of reinstatement is speculative especially where the discord between employee and employer may make reinstatement infeasible). Because each employee's injuries differ—in ways that cannot be calculated—we need not devise a consistent explanation of the precise injuries ADEA liquidated damages redress. Rather, we believe that Congress's use of the term *liquidated* is dispositive.

ADEA redresses a tort-like personal injury claim. *See Downey v. Commissioner*, 100 T.C. 634, 657, 1993 WL 231740 (1993). If the answer is yes, *all* damages received on account of that claim are not taxable. Because I agree with the majority that the ADEA creates a tort-like cause of action, both the backpay award and the liquidated damages award in this case should not be taxable.

The majority, however, has to square this result with the test they created in *Hawkins*. In *Hawkins*, the majority held that punitive damages received in a tort case are taxable because they are "not necessarily awarded 'on account of' personal injury; rather, they are awarded 'on account of' the tortfeasor's egregious conduct." 30 F.3d at 1080. According to the majority in this case, damages are not received "on account of" personal injury "unless they have some compensatory purpose and bear some relationship to the taxpayer's underlying personal injury." Unfortunately, I don't see how the majority can distinguish ADEA liquidated damages from punitive damages. I think this inconsistency merits attention because it demonstrates problems with the majority's approach in both this case and *Hawkins*.

A. ADEA liquidated damages should really be called double damages because the term liquidated damages is a misnomer. *Cf. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 114, 105 S.Ct. 613, 618, 83 L.Ed.2d 523 (1985) ("[A] 'willful' violation of the ADEA[ ] entitl[es] a plaintiff to 'liquidated' *or double damages.*") (emphasis added). The term "liquidated damages" suggests compensation for damages that are too obscure and difficult to prove. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). However, ADEA liquidated damages serve an entirely different purpose.

The ADEA provides that its provisions "shall be enforced in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 626(b). However, Congress modified the ADEA remedial provisions in two important respects. First, the ADEA did not incorporate § 16(a) of the FLSA which criminalizes willful violations. *See id.* §§ 216(b) & 626(b). Second, liquidated damages are automatically awarded under the FLSA, *see id.* § 216(b);[1] by contrast, under the ADEA, liquidated damages are only awarded if the violation is willful, *see id.* § 626(b). Because ADEA liquidated damages replaced the criminal provisions of the FLSA, the *Thurston* Court concluded, "The legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." 469 U.S. at 125, 105 S.Ct. at 624. Based on *Thurston*, I think it's clear that ADEA liquidated damages are akin to punitive damages.

Treating ADEA liquidated damages like punitive damages has also been the law of this Circuit since *Kelly v. American Standard, Inc.*, 640 F.2d 974 (9th Cir.1981). The *Kelly* court stated: "[T]he award of liquidated damages is in effect a substitution for punitive damages and is intended to deter intentional violations of the ADEA." *Id.* at 979. In *Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 556 (9th Cir.1983), *aff'd*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985), the court upheld an award of both prejudgment interest and liquidated damages under the ADEA because "liquidated damages and prejudgment interest serve different functions in making ADEA plaintiffs whole." Relying on *Kelly*, the *Criswell* court reasoned that liquidated damages are "a substitution for punitive damages" because they are "intended to deter intentional violations of the ADEA." *Id.* (internal quotations omitted). By contrast, prejudgment interest is intended to compensate for the loss of use of the money. *Id.* at 556–57.[2] I don't see how

---

1. The court has discretion to award no liquidated damages or reduced liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the" FLSA. 29 U.S.C. § 260.

2. The Ninth Circuit was the only circuit to adopt this interpretation of ADEA liquidated damages prior to the Supreme Court's decision in *Thurston*. *See, e.g., Powers v. Grinnell Corp.*, 915 F.2d 34, 39 n. 6 (1st Cir.1990); *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1102 n. 7 (11th Cir.1987). However, after the *Thurston* Court held that "Congress intended for [ADEA]

the majority can run away from the clear language in *Thurston, Kelly,* and *Criswell* indicating that liquidated damages should be treated like punitive damages.

B. Because the majority held in *Hawkins* that punitive damages are taxable, a logical application of that rule suggests that ADEA liquidated damages are also taxable. ADEA liquidated damages, like punitive damages, are only awarded in cases of willful violation. ADEA liquidated damages, like punitive damages, are intended to punish and deter.

The majority tries to distinguish ADEA liquidated damages by claiming they "have *both* a compensatory and a punitive purpose." What compensatory purpose? Under the law of this circuit, ADEA liquidated damages do not compensate for the loss of the use of the money, emotional distress, or pain and suffering. *See Criswell,* 709 F.2d at 556–57; *Cancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1318 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Naton v. Bank of California,* 649 F.2d 691, 698–99 (9th Cir.1981). Realistically, what's left to compensate? The majority's suggestion that Congress may have decided that only parties suffering willful discrimination should recover for intangible or incalculable injuries is peculiar. After all, victims of nonwillful violations would suffer the same intangible or incalculable harm. To me, the willfulness requirement clearly suggests a punitive purpose.

In support of its claim that ADEA liquidated damages serve a compensatory purpose, the majority relies heavily on the Conference Report for the 1978 amendments to the ADEA. The Conference Report states that liquidated damages "compensate the aggrieved party for nonpecuniary losses" and that the amended ADEA "does not provide remedies of a punitive nature." H.R.Conf. Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* 1978 U.S.C.C.A.N. 528, 535. However, the 1978 amendments only provided for a jury trial on the issue of liquidated damages; it did not alter the nature or definition of liquidated damages. The Confer-

ence Report's comments in 1978—11 years after the passage of the ADEA—are interesting, but shouldn't be given much weight. It's ironic that the majority relies so heavily on subsequent legislative history. In *Hawkins,* the majority rejected a similar argument because "'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Hawkins,* 30 F.3d at 1082 (quoting *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1961)). Here, the subsequent legislative history is even less relevant because Congress did not in any way alter the definition or availability of liquidated damages.

More troubling, however, is the majority's statement that "for purposes of § 104(a)(2), the proper inquiry is not the damages' relationship to the tortfeasor, but their relation to the taxpayer." In other words, even if the case law says ADEA liquidated damages are intended to punish the tortfeasor, "from the recipient's perspective," the liquidated damages may still represent compensation for hard-to-calculate losses. I'm not sure I understand the majority's argument. If ADEA liquidated damages are designed to punish the tortfeasor, it shouldn't matter whether the award is viewed from "the recipient's perspective." The recipient's thoughts or beliefs are irrelevant. The question should simply be: Why are the ADEA liquidated damages awarded? Based on the case law, I think it's clear that ADEA liquidated damages are awarded to punish the tortfeasor, not compensate the victim.

The majority also believes it's significant that "ADEA liquidated damages ... bear a relation to the underlying personal injury" because liquidated damages "must equal the plaintiff's total pecuniary loss." But simply doubling the backpay award to compensate for intangible or incalculable injuries seems a rather arbitrary way to compensate victims of discrimination. If the ADEA provided that liquidated damages would be equal to 1000 times the backpay award, the liquidated damages would also "bear a relation to the

liquidated damages to be punitive in nature," *see* 469 U.S. at 125, 105 S.Ct. at 624, two circuits reversed their original positions and embraced

the *Criswell* approach. *See Reichman v. Bonsignore, Brignati & Mazzota, P.C.,* 818 F.2d 278, 281–82 (2d Cir.1987); *Lindsey,* 810 F.2d at 1102.

underlying personal injury" and would increase if the backpay award increased. Under those circumstances, I imagine the majority would say the liquidated damages were clearly punitive. But what's the principle distinguishing the two awards? I'm worried the majority's test may break down into the following rule: large awards (which we may think are excessive) are taxable (*e.g., Hawkins*), but small awards (which we may think are more reasonable) are not taxable (*e.g.,* this case). As I indicated in *Hawkins,* I fear this new test may sow more confusion than clarification.

C. If I am correct, the majority should treat ADEA liquidated damages like punitive damages. Based on *Hawkins,* ADEA liquidated damages should be taxable. Of course, I don't think that's the "right" result, but I think that's the result *Hawkins* requires. The majority's application of the *Hawkins* test to this case only reinforces my belief that *Hawkins,* despite the majority's best intentions, was wrongly decided.